[No. 4002.]

HEALEY ET AL. v. RUPP.

1. INSTRUCTIONS—REQUESTED—INCONSISTENT.

A party cannot complain of a refusal to give an instruction re quested, although it contain a correct statement of law applicable to the case, if the court has given an inconsistent instruction on the same subject at the request of the same party.

2. SAME—MINES AND MINING—DISCOVERY.

In an adverse suit where at defendants' request the court instructed the jury that a discovery of mineral at any point within the boundaries of the claim would make the location valid, if made prior to the discovery of mineral on the claim of their adversary, they cannot object to the refusal of the court to instruct the jury at their request that the discovery of mineral at any point other than in the discovery shaft will not avail or validate the location. Mr. Justice Gabbert dissents from the conclusion of the majority of the court that the instruction given should be construed as directing the jury that a discovery at any point within the claim would validate the location.

3. MINING CLAIMS—ADVERSE SUIT—EVIDENCE—"SALTING" SHAFT.—

In an adverse suit where it was claimed by the plaintiff that defendants' discovery shaft had been "salted" evidence was admissible that four persons, one of whom was pointed out in court, and neither of whom was a party to the suit or in any way interested in the subject

matter of the action, were seen to visit the shaft about midnight where they acted in a suspicious way, although there was no evidence tending to connect them with defendants. Mr. Justice Gabbert dissenting.

4. ·MINING CLAIMS—DISCOVERY OF MINERAL—EVIDENCE.

In an adverse suit where it was claimed by plaintiff that no mineral had been discovered in the discovery shaft on defendants' claim, it was error to reject evidence offered by defendants to prove that a sample of ore claimed to have been taken from the dump of their discovery shaft showed precious minerals in appreciable quantities.

## Appeal from District Court of Lake County.

The subject of this controversy is the conflict between two lode mining claims, known as the Canestota and the Last Batch. Appellee, as plaintiff, and owner of the former, brought this action in the court below in support of his adverse against the application of appellants, as defendants, for patent to the latter. From a judgment in favor of plaintiff, the defendants appeal.

The Last Batch bases its location as of October, 11, 1887, and the Canestota as of January 13, 1896. The discovery shaft of the Canestota discloses no vein or mineral whatsoever. It is the point designated "discovery" on this location. The existence of a vein in the discovery shaft of the Last Batch is controverted. For the purpose of establishing the discovery of mineral within the boundaries of the Canestota, evidence was introduced on behalf of plaintiff to the effect that in a shaft, known as the Price, sunk partially within the boundaries of that location and an adjoining one, known as the Salina, mineral was discovered in that part within the Canestota. No location of the Canestota was made upon this alleged discovery. On behalf of defendants the following instruction was requested and refused:

"The jury is instructed that a discovery of mineral, within the meaning of the statute of the state of Colorado upon that subject, requires that such discovery shall be made in the discovery shaft upon which the location is based. A dis-

covery of mineral elsewhere than in the discovery shaft will
not avail, and if you believe from the evidence in this case
that there has been no discovery of mineral as hereinbefore
defined in the discovery shaft of the Canestota location, in
such case the plaintiff cannot prevail in this action."

At the instance of defendants the court instructed the jury
as follows:

" * * * To make a valid location of a mining claim,
a citizen of the United States, or one who has declared
his intention to become such, must enter upon the unoccu-
pied, unappropriated and unclaimed mineral domain of the
United States, and discover within the limits of the claim
located a vein, lode, ledge or deposit of mineral-bearing
rock in place, and substantially comply with the following
requirements:—

*First:* Sink a discovery shaft upon the lode to a depth
of at least ten feet from the lowest part of the rim of such
shaft at the surface, or deeper, if necessary to show a well-
defined crevice.

*Second:* Post at the point of discovery on the surface a
plain sign or notice containing the name of the lode and the
name of the locator and the date of discovery. * * *

"2. The court further instructs you that if you believe
from the evidence in this case that the defendants, or their
grantors, being citizens of the United States, or having de-
clared their intention to become such, made a valid discovery
of a vein or lode of mineral-bearing rock in place carrying
gold, silver or lead in appreciable quantities within the ex-
terior bounds of the Last Batch lode mining claim, and duly
located their said claim, and filed a location certificate
thereof as required by law, and if you also find that their
discovery of such vein ante-dates any valid discovery made
on the Canestota claim by plaintiffs, then the defendants
have the better right and are entitled to a verdict in their
favor.

"3.  *  *  *  So, in this case, if you find from the evidence that the Last Batch location in all things conformed to the law, save and except the finding of mineral within the discovery shaft, and if you further find from the evidence that such mineral was found on the Last Batch claim, in rock in place in the general mass of the mountain prior to the finding of mineral in rock in place in the general mass of the mountain on the Canestota lode mining claim, then and in that event the Last Batch location is entitled to prevail over the Canestota location as to priority of discovery of mineral. And if you find from the evidence the location of the Last Batch in all respects to be prior to and superior to the Canestota location, and you further find that such location has a valid discovery of mineral within it as herein defined, prior to the finding of mineral in the Canestota location, then and in that event the Canestota location is invalid and of no force or effect in so far as the said Canestota location conflicts with the Last Batch location."

Defendants made no claim that mineral had been discovered on the Last Batch at any point other than in the discovery shaft of that claim. Counsel for defendants contend that a valid discovery of mineral cannot be shown at any place within the limits of the claim located other than the discovery shaft, unless the claim be re-located and the second discovery made the basis of such re-location. On behalf of the plaintiff it is contended that defendants are foreclosed from having this question considered and determined, for the reason that under instructions given at their request, the jury was directed that a discovery of mineral within the boundaries of the Last Batch at any point would render the location of that claim valid, if made prior to a discovery upon the Canestota.

Defendants offered to prove that a sample of ore claimed to have been taken from the dump of the Last Batch discovery shaft showed precious minerals in appreciable quanti-

ties, which offer was refused.

It appears from the record that plaintiff attempted to establish that the discovery shaft of the Last Batch had been "salted." Norman Estey, interested in a lease on the Canestota, employed one Anderson to watch this shaft. While so engaged, four persons, neither of whom is a party to this action, or in any manner interested in the subject matter of the controversy, came to this shaft about midnight, and acted in a suspicious manner. Anderson did not see these parties do anything which would indicate that they did any "salting," nor was there any evidence tending to connect them with the defendants. Counsel for the latter moved to strike out this evidence, which was refused. The court stated in its instructions, that this evidence was admitted for the sole and only purpose of throwing light upon assays of samples claimed to have been taken from the Last Batch shaft.

Messrs. PHELPS & PENDERY and Messrs. PATTERSON, RICHARDSON & HAWKINS, for appellants.

Mr. T. A. DICKSON, for appellee.

Mr. JUSTICE GABBERT delivered the opinion of the court.

The instruction requested on behalf of defendants, and refused, was to the effect that the discovery of mineral at any point other than in the discovery shaft will not avail or validate a location. According to the undisputed facts, the point of discovery and the discovery shaft upon each claim are one and the same, so that the important question (independent of the disclosure of a vein in the discovery shaft) which defendants raised by the instruction refused, is, must a location of a lode mining claim be based upon a specific vein? In the opinion of the majority of the court, they are precluded from having this question considered and deter-

mined, for the reason that under the instructions given at their request, the jury was, in effect, directed that the discovery of mineral within the boundaries of the Last Batch at any point would render the location of that claim valid, if made prior to a discovery upon the Canestota. If, in effect, the instructions given at the request of defendants are susceptible of this construction, then, unquestionably, they are precluded from having the question sought to be raised by the instruction requested and refused, determined, for the obvious reason that if instructions given at their request do not state the law correctly, they cannot complain of the refusal of the court to give an instruction which, though correct, is inconsistent with those given; or, in other words, states the law differently on a given point from those given at their instance. With the conclusion of the majority that the instructions given at the request of counsel for defendants state, in effect, that a discovery of mineral at any point within the boundaries of the Last Batch could be considered as a discovery which might validate that claim, the writer does not agree. The instructions as given, and which appear in the statement must be read and construed as a whole. From these it appears, in the judgment of the writer, that the jury was directed, in effect, that a discovery shaft must be sunk upon the vein; that a notice must be posted at the point of discovery; that it must appear from the evidence that a valid discovery of a vein was made within the exterior boundaries of the Last Batch, *as required by law.* (From which it must be understood that a vein was disclosed in the discovery shaft), and that in order to entitle the defendants to recover, it must appear that the finding of mineral within the limits of their claim in the manner defined in the instructions—*i. e.,* upon the vein which they claim to have located, and at the point designated "discovery," must ante-date the finding of mineral in the Canestota. As an additional reason why this construc-

tion should be given these instructions, it must be borne in mind that the defendants made no claim that mineral was discovered at any point on the Last Batch except in the discovery shaft. The conclusion of the majority precludes a consideration of the action of the trial court, in refusing to give the instruction requested.

The fact that the Price shaft was only partially within the boundaries of the Canestota is immaterial. The simple question, so far as that location is concerned, was, whether mineral had been discovered in that shaft, within the boundaries of the Canestota. If so, and it ante-dated a discovery of mineral in place on the Last Batch, then, under the theory upon which the cause was submitted to the jury, it validated the Canestota. As this was a theory which, in the opinion of the majority of the court, appears to have been adopted at the instance of counsel for defendants, whether or not it is correct we do not pretend to pass upon, and the conclusion that the discovery of mineral in the Price shaft might validate the Canestota location, if made before mineral was discovered on the Last Batch is reached, for the reason that the instructions of the court that it would, are in harmony with those given at the instance of defendants in this respect.

In the opinion of the majority of the court, the evidence of the witness Anderson was admissible. Plaintiff claimed that the shaft of the Last Batch had been "salted," and therefore, any evidence tending to establish this claim was competent. Whether or not the parties who visited this shaft at the time mentioned by Anderson did so at the instance of the defendants, was a matter for the jury to determine, especially in view of the fact that Anderson pointed out at least one of them in the court room, and the defendants did not place him upon the stand for the purpose of either contradicting the witness Anderson, or showing at whose instance, or for what purpose, they visited the shaft.

Neither did they attempt to show that these parties did not visit the premises at their request. The writer does not believe that this evidence should have been admitted. The fact that the defendants did not see fit to attempt to show that these parties did not visit the shaft, or do the acts as detailed by Anderson, at their request, or did not call the witness pointed out by him in the court room, are not matters which should be taken into consideration in determining the admissibility of this testimony. Their failure to contradict it, or explain it in any way, does not affect their right to object to that which is immaterial and incompetent. There was no evidence whatever, tending to show that these parties who visited the Last Batch shaft did so at the instance of the defendants, or were in any manner connected with them, or interested in the subject matter of the controversy. In the absence of such testimony, the statement of Anderson tended to cast suspicion upon the defendants, that they were guilty of "salting" the shaft of the Last Batch, by the suspicious action of parties with whom they had no connection, and who, so far as disclosed by the record, may have visited the property at the instance of the plaintiffs. This testimony, in the opinion of the writer, should have been excluded.

The evidence regarding the assay of a sample of ore claimed to have been taken from the dump of the Last Batch should have been admitted. Whether or not, as a matter of fact, such sample was originally taken from the shaft was a proper matter for argument before the jury, and for it to consider in determining what weight should be given to such evidence. For the error in excluding this evidence, the judgment is reversed, and the cause remanded for a new trial.

*Reversed and Remanded.*