DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF WYOMING

APRIL TERM, 1908.

## WHITING ET AL. v. STRAUP ET AL.

MINES AND MINERALS—PLACER MINING CLAIMS— OIL AND GAS—LO-
CATION—DISCOVERY—POSSESSION.

1. Lands containing petroleum or other mineral oils, or a de-
   posit of natural gas, may be located as placer claims under
   the mining laws.
2. A discovery of mineral within the limits of the claim is
   essential to a valid location of either a lode or placer
   mining claim on the public domain.
3. Discovery need not necessarily precede the other acts of
   location, but if made prior to any intervening rights,
   though subsequent to marking the boundaries and record-
   ing the claim, the location, if otherwise good, will be
   validated at least from the date of discovery.
4. One discovery is sufficient for the entire claim where more
   than 20 acres is properly located by an association of per-
   sons as one placer claim.
5. Upon a valid location of a mining claim a legal right of
   possession follows.
6. A party may act by an agent in locating a mining claim,
   and a location may be made by an agent without the
   knowledge of the principal, if there is a local rule author-
   izing it, or otherwise there may be antecedent authority
   or subsequent ratification.

7. Where, after the performance of the necessary acts for the location of an oil placer mining claim, except that of discovery, the one who acquired the right of the locators conveyed a part of the tract embraced in the claim, and subsequently as an employee and agent of another peaceably and in good faith entered and made a discovery upon the remaining tract and located the same for his principal, such discovery did not validate the previous location or perfect the title of the grantee to the tract conveyed, but inured to the benefit of the later location.

8. In that case the party for whom the discovery and later location was made is not bound or estopped by the former acts and conveyance of the one so employed to do the work of exploration, discovery and location.

9. The fact that the party acting as such agent and employee is a stockholder of a corporation which subsequently acquired title by conveyance from the locators to the claim last located does not estop the company from claiming the same or questioning the right of the grantees claiming under the previous location.

10. While the possession of one claiming land under the mining laws is good without a valid' location as against a mere intruder, mere naked possession will not avail against a valid location peaceably made, and confers no right against a bona fide prospector who enters upon the land peaceably for the purpose of acquiring title thereto as a mining claim.

11. The right to make a location of a mining claim cannot be based upon a trespass.

12. Where one seeks in good faith to make a location of a mining claim he is entitled to exclusive possession of the land sought to be located for a reasonable time to complete his location, or for such time as may be allowed by the customs or rules of miners, or the statutes of the state or territory, but to be available for that purpose, the possession when alone relied on, must be actual, and connected with active, diligent work of exploration, with the intention, if mineral is found, to make a location.

13. Plaintiffs claimed the land in controversy under a prior location as an oil placer mining claim, which had not been completed by discovery, and after acquiring the right of the locators they dug a hole on the land ten feet deep, intended chiefly to show a claim of possession and as preliminary to the erection of a drilling machine, but allowed more than a year thereafter to elapse before taking a machine on the premises and commencing actual work of ex-

ploration, though during such period in going to and fro between other lands and places the plaintiffs frequently crossed the land upon a public road thereon, and watched it to see that it was not interfered with by others. In the meantime when plaintiffs and their employees were absent from the land the parties under whom defendants claimed went upon the land peaceably and made a discovery and location. *Held* that plaintiffs did not have such actual possession as unaided by a valid location, would exclude other bona fide locators or prospectors, or entitle them to the land as against the defendants.

[Decided May 25, 1908.]                    (95 Pac. 849.)

Error to the District Court, Converse County; Hon. Richard H. Scott, Judge.

The action was brought by X. Whiting and J. Bevan Phillips against Erastus Straup, Moses Bijur and the La Prele Oil Company to enjoin the defendants from trespassing and drilling an oil well upon certain land. The parties were rival claimants of the land as oil and gas placer mining ground, upon which conflicting locations had been recorded. From a judgment in favor of the defendants the plaintiffs prosecuted error. The material facts are stated in the opinion.

*W. R. Stoll,* for plantiffs in error.

Since certificates of location of mining claims and affidavits of assessment work are required by statute to be filed for record, the record thereof is *prima facie* evidence of the truth of the facts required to be therein recited, without an express provision to that effect. (Rev. Stat. 1899, Secs. 2553, 2599, 2739, 2741, 2751; Laws 1901, Ch. 100, pp. 104-105; 1 Lindley on Mines, Sec. 392; Barringer & Adams Law of Mines and Mining, 239, 267, 333; U. S. Rev. Stat., Sec. 2324; Mason v. Wilkinson, 2 Mont., 21; Mesick v. Sunderland, 6 Cal., 298; Chamberlain v. Bell., 7 Cal., 293; Golden Fleece Co. v. Cable &c. Co., 12 Nev., 312.)

A locator of a mining claim being allowed the entire year beginning with the first of January succeeding the year in which he makes the location within which to do his assess-

ment work, if plaintiffs in error could be considered in the
light of locators, dating their location from August 18, 1902,
they would have all of the remaining year of 1902 and all
of the year 1903 to do their assessment work.   (Sec. 2324,
R. S. U. S., as amended, Supp. R. S. U. S., Vol. 1, p. 276;
Barringer & Adams, 263, 268; 2 Lindley on Mines, Secs.
624, 625.)   The principle equally applies where the claimant
claims under color of title, and, therefore, to the plaintiffs,
though they were not the original locators, but held under
a quit claim deed.   (1 Cyc., 1082-1101; 2 Lindley on Mines,
Sec. 633; Dolles v. Mines Co., 23 L. D., 267.)

Actual possession is valid as against a mere intruder or
one having no higher or better right, and one in possession
of a mining location attempting to discover mineral within
its limits, has a right to protect his claim from the intrusion
of others, whether they come there for the purpose of pros-
specting for minerals or otherwise.   He may forcibly expel
them, or he may resort to law to protect his possession.   And
he cannot be ousted by the mere fact that the second claim-
ant has discovered mineral first.   (1 Lindley on Mines, Secs.
216-219, 378; Barringer & Adams M. & M., 216, 318-319;
Crossman v. Pendery, 8 Fed., 693; Cosmos Ex. Co. v.
Gray Eagle Oil Co., 112 Fed., 4; Weed v. Snook, 144 Cal.,
439.)   The only question as to possession is between plain-
tiffs and defendants.   As between these parties, plaintiffs
were in possession at the time of the intrusion, which was
made without their acquiesence, knowledge or consent, and
against their will.   At the time of this intrusion, plaintiffs
were not only in actual possession, but the property had
previously been located, and plaintiffs had the paper title to
the same, connected back with the original locators, and
held the same under color of title.   This being so, defend-
ants cannot claim any right to possession, inasmuch as their
claim is based on an entry in October, 1903, made without
the knowledge or consent of plaintiffs and against their will.

Land is not vacant and unoccupied within the meaning
of the mineral laws when such land is covered by a loca-
tion and in the possession of the locators or their trans-

ferees. It is not necessary for such locators or transferees, where the claim is an oil or gas placer claim, to have discovered, or to be actually in the process of drilling for, either oil or gas upon the claim before it can be said that the claim itself is lawfully in their possession. All that is necessary is that, as between the parties raising the question and the persons in possession of the claim in good faith and holding the same under color of title, whether as original locators or as subsequent transferees, the latter are in possession of the same. And though mere surface indications, such as seepage of oil or gas, are not ordinarily a sufficient discovery to support a mining location of oil or gas lands, as against the Government, but oil or gas must be actually discovered within the claim, yet discovery need not precede location. A discovery subsequently made will relate back to and perfect the location; and the rights of the locators are the subject of sale and transfer as well before as after the discovery. (Cosmos Expl. Co. v. G. E. Oil Co., 112 Fed. 4, 190 U. S. 301; Kern Oil Co. v. Clarke, 30 L. D. 550; Oil Co. v. Clarke, 30 L. D. 570; New Sierra Oil Co. v. Home Oil Co., 98 Fed. 673; New Sierra Oil Co. v. Miller, 97 Fed. 681; Miller v. Chrisman, (Cal.) 73 Pac. 1083; Moffat v. Blue River &c. Co., 33 Colo. 142; 1 Lindley on Mines, Sec. 330; Weed v. Snook, 144 Cal. 439.)

It is a general rule relating to quit-claim deeds, or deeds of any character, that if it appears on the face of the instrument, either expressly or by necessary implication, that the grantor possesses a particular estate in the premises and he conveys the same by the instrument, he and all persons in privity with him are estopped from ever afterwards denying that he was so seized and possessed at the time he made the conveyance, and this estoppel works upon the estate and binds an after-acquired title as between parties and privies. By the deed from Straup and its recitals he became estopped to claim title as against those claiming under the conveyance. (1 Devlin on Deeds, Sec. 27; 2 id., Secs. 837, 840; R. S. 1899, Secs. 2733, 2768, 2769; 16 Cyc., 688, 692, 695-696, 699; Reynolds v. Cook, (Va.) 3 S. E. 710; Flanary

v. Kane, (Va.) 46 S. E. 681; French's Lessee v. Spencer, 21 How. 228; Landes v. Brant, 10 How. 347; Van Renslaer v. Kearney, 11 How. 297; Macgruder v. Esmay, 35 O. St. 221; Jackson v. Fish, 10 Johns. 456; Hagensick v. Castor, (Neb.) 73 N. W. 933; Clark v. Baker, 14 Cal. 612; Taggart v. Risley, 4 Ore. 236; Crane v. Salmon, 41 Cal. 63.) The other defendants were bound by the knowledge of Straup, and chargeable with notice of the facts imparted by the documents on record relating to the land.

Where several persons are acting together jointly, either in their own business or as the agents for another, the knowledge acquired by one of them while so acting is the knowledge of all. The knowledge of the officers or agents of a corporation when acting in their official capacity relating to the business of the corporation, is the knowledge of the corporation. (10 Cyc, 826, 1054, 1057, 1059, 1062-63; Wade on Notice, Secs. 687, 688; Mechem on Agency, Secs. 721-731.)

*F. H. Harvey,* and *Burke & Clark,* for defendants in error.

The location under which plaintiffs' claim was invalid for want of a discovery, and the discovery thereafter made on the north forty of the claim by Straup did not inure to the benefit of the former location, but to the benefit of the locators of the later claim in whose behalf the discovery was made. Even were it a fact that the original owners of the former claim had discovered oil or gas within the bounds of the claim held by them, it could not be contended by the plaintiffs in error herein that such discovery would inure to the benefit of the south forty thereof, which had been, prior to such discovery, conveyed to Phillips, for it is settled that whenever a claim is divided and a portion conveyed in severalty, there is a severance of community interest, and each parcel constitutes a separate claim and must stand upon its own bottom—must have a separate discovery and separate assessment work to the full statutory amount. (2 Lindley, Par. 338.)

Therefore, the proposition involved is whether Phillips and Whiting had such possession of the land as to successfully prevent a location by prospectors who had discovered gas under the surface of the land in controversy, and whether or not the defendants are estopped from alleging a discovery and location made by Straup as their agent because of the fact that he had previously conveyed by quit claim deed, the property in controversy to Phillips. Since the location made by Straup and conveyed to Phillips was not based upon a valid discovery prior to the time the conveyance was made, or any valid discovery by Phillips prior to October, 1903, when Straup moved the drilling rig of the locators upon the land and began drilling a gas well there, Bijur and associates could justify their action in locating upon this land and basing their location upon a valid discovery made therein, irrespective of any attempted location not based upon discovery, by any persons prior thereto. A valid claim may be located for others through an agent, and the conveyance previously made by Straup to Phillips by quit claim deed could not operate as an estoppel to their location, based upon a valid discovery made within the ground which Straup had previously located upon, but upon which neither he nor his successors in interest had made any valid discovery. Although the location was made on behalf of Bijur and his associates by an agent, the doctrine of estoppel will not apply to the La Prele Oil Company, which subsequently became invested with the title, and it can make no possible difference that Straup was connected with that Company. The title which the company received has no privity whatever with Straup. Bijur and his associates, we contend, could locate a placer oil mining claim through any agent, irrespective of notice of the purported conveyance from Straup to Phillips of a portion of the claim which they located. Their title subsequently conveyed to the La Prele Oil Company must rest upon the validity of the location made by them, it being shown on their part that the location made by Straup on his own behalf was not valid, and that neither he nor his asso-

ciates nor their successors in interest could base any claim to the land upon any valid existing location.

Where a person relies for assessment work on work done on one claim for the benefit of another in furtherance of a common system of development, "The burden of proof is on him to show that the work done or improvement made, does, as a matter of fact, tend to the development of the property as a whole, and that such work is part of a general scheme of improvement." (Lindley, Sec. 630.)

Plaintiffs made no attempt to show that work credited to this claim tended to develop the claim, or was part of a general scheme of development. All the assessment work done for the year 1902, consisted of digging a hole at an expense of $6.00. That being the fact, the claim—if they had a claim—became subject to forfeiture by re-location on January 1, 1903. It was in that situation October 22, 1903, when Philip M. Brill and seven others initiated a valid location by discovery of gas and oil, afterwards consummated by the location of "La Prele No. 2" oil and gas placer claim. Straup himself might have re-located the land in his own name and acquired a valid paramount title. (Blake v. Thorn, (Ariz.) 16 Pac. 270.) An *ex parte* assessment affidavit, even if in proper form, does not constitute *prima facie* evidence under the statutes of this state. To have that effect requires an express statutory provision.

The evidence is insufficient to show actual possession of the land by the plaintiffs. A prospector, prior to discovery, in order to maintain a possessory right to the land, must remain in actual possession. He must be on the ground with the usual appliances for mining, and with reasonable diligence working the same. (Lindley, Sec. 688; Cosmos Expl. Co. v. Oil Co., 112 Fed. 4; Gray Eagle Co. v. Clarke, 30 L. D. 570; Kern Oil Co. v. Clotfelter, Id. 583.)

Section 2319, R. S. U. S., declares that all valuable mineral deposits in land belonging to the United States are free and open to exploration and purchase, and the lands in which they are found to occupation and purchase by citizens of the United States. This gives all citizens a right

to prospect the public lands. It is a right in common. No one has the exclusive right to prospect any particular tract. An exclusive right to any portion of the public mineral land can be initiated only by discovery of mineral. (2 Lindley, 437; State v. McBride, 25 L. D. 169; Reins v. Murray, 22 L. D. 409.) Discovery is as essential in oil claims as in the case of lode locations. (Wolfskill v. Smith, 89 Pac. 1001; 2 Lindley on Mines, 432, 433, 437, 448, 463; Sierra Co. v. Miller, 97 Fed. 681; Sierra Co. v. Oil Co., 98 Fed. 673; Olive L. & D. Co. v. Olmstead, 103 Fed. 568; Cosmos &c. Co. v. Gray Eagle Co., *supra.*)

Estoppels bind only parties and privies. (Hopkins Real Prop., 455; 2 Ency. L., 2nd Ed., 394.) A deed made by a person individually does not estop him in a representative capacity. (16 Cyc., 712, 780.) A corporation is never estopped by the deed or declaration of its stockholder. (Bigelow on Estoppel, 70; Clark & Marshall Priv. Corp., 1907, 2117.) Straup having given a quit claim deed only would not have been estopped to set up an after acquired title. (16 Cyc., 688; Hopkins Real Prop., 728; Bigelow on Estoppel, 298; 2 Ency. L., 2nd Ed., 409; Balch v. Arnold, 9 Wyo. 29.)

Admitting that Bijur and associates had notice of an attempted prior location by Straup and a conveyance by him to Phillips, they had further notice that such a location was invalid and absolutely void for the reason that it was not based upon a discovery; that the land was not in the actual possession of any person, and that no person was diligently endeavoring, at the time of their entry thereon, to discover gas or oil within the limits of the claim.

POTTER, CHIEF JUSTICE.

This action was commenced in the District Court of Converse County October 24, 1903, by the plaintiffs in error, J. Bevan Phillips and X. Whiting, against the defendants in error, Erastus Straup, Moses Bijur, and the La Prele Oil Company. The object of the suit is to enjoin the defendants from trespassing and particularly from driving

or sinking an oil or gas well upon a forty acre tract of land in the county aforesaid, described as the southeast quarter of the southeast quarter of Section 3, in Township 32 north, Range 73 west. The contest is between rival claimants of the land as oil and gas placer mining ground on the public domain, the legal title being in the United States. The plaintiffs claim under an oil placer mining location covering the east half of the southeast quarter of said section, alleged to have been made June 14, 1899, by the defendant, Erastus Straup, and three associates, and the plaintiffs allege that, as a part of that claim, the tract in controversy had been transferred to them by mesne conveyances, that they had taken possession thereof, and were in possession actively engaged in working and developing the same at the time of the entrance thereon by the defendants and the trespasses complained of.

On the ground that the mining location aforesaid was neither preceded nor followed by a discovery by the locators thereof or their grantees of oil, gas, or other mineral within the limits of the claim, its validity is denied by the defendants, and they rest their right to possession upon a discovery of gas upon the tract in controversy and its location as a part of an oil and gas placer mining location in October, 1903, when, as they allege, the tract was vacant and unoccupied public land of the United States, the right to such possession being alleged to have vested in the La Prele Oil Company, one of the defendants, as the successor in interest of the persons for whom such discovery and location were made.

Upon the trial the district court found generally for the defendants and that the temporary restraining order against them which had been granted at the commencement of the suit should be dissolved, and a judgment was entered in favor of the defendants for costs, and ordering that the possession of the premises in controversy do vest in the defendants, Moses Bijur and the La Prele Oil Company. The judgment is here complained of on error.

It is admitted in the pleadings that previous to June 14, 1899, the land here involved was vacant and unoccupied public land of the United States, that on said date, in connection with the adjoining north forty acres, under the description of the east half of the southeast quarter of said section 3, it was staked and marked as an oil placer mining claim by Straup and his said associates, that the proper notices were posted thereon, and a location certificate recorded, and that said claim was designated as "Gusher No. 2." It seems to be conceded, as it must be upon the evidence, that at the time of locating said claim there had been no discovery within its limits of oil, gas, or other mineral authorizing the location of a placer mining claim, and further, that no such discovery had occurred up to the time that the tract in controversy was conveyed to the paintiffs, nor thereafter until sometime in the fall of 1903, when gas was discovered upon the north forty of the claim (the part not transferred to plaintiffs) by Straup, while engaged in drilling a well thereon for and under the direction of the defendant, Bijur.

On November 18, 1899, the locators of the "Gusher No. 2" claim conveyed the premises covered thereby, viz: the east half of the southeast quarter of said Section 3, together with other premises, by quit claim deed, to Erastus Straup & Co., describing the premises conveyed by legal sub-divisions and referring to the same as "oil placer mining ground as located, surveyed, recorded and held by said parties of the first part." By a similar conveyance, Erastus Straup & Co., on September 24, 1901, conveyed the premises so located, together with other lands therein described, to Erastus Straup, reciting that the lands described were covered by oil placer mining claims. On August 16, 1902, Erastus Straup conveyed by quit claim deed to J. Bevan Phillips, one of the plaintiffs, the tract here in controversy, designating it, in addition to its usual description, as "oil placer mining ground, located, surveyed, recorded and held by said party of the first part." On August 18, 1902, by a like conveyance and description, said Phillips conveyed an

undivided one-half interest in and to the premises in controversy to X. Whiting, his co-plaintiff. It will be observed that the premises thus conveyed to the plaintiffs is the south 40 of the 80 acres embraced in the oil placer claim aforesaid.

On December 28, 1899, an affidavit of Erastus Straup and another was filed and recorded in the office of the County Clerk of Converse County to the effect that the necessary annual assessment work for the year 1899 had been performed upon various tracts of land consisting of 8,430 acres, more or less, therein referred to generally as oil placer mining claims and described by legal sub-divisions, in which was included the land in controversy. In describing the lands they were not separated into distinct claims, nor was any claim designated by name. A similar affidavit of said Straup was filed for the years 1900, 1901 and 1902, each one describing several hundred acres, including the land in controversy.

In January, 1903, the La Prele Oil Company was incorporated under the laws of this State with the defendant, Moses Bijur, as one of the incorporators, and Straup was named in the certificate as one of the seven trustees for the first year, and it appears that he became a stockholder of the company. Under the date of May 5, 1903, a written contract was entered into between the defendants, Straup and Bijur, whereby the former, in consideration of one hundred dollars per month, to be paid him as salary and expenses, agreed to look after, direct, manage and attend any work, labor or interest the said Bijur might require of him, and to devote his best energy and ability in safeguarding and advancing the interest of said Bijur, and to devote all his time during such employment for said Bijur's benefit. The latter is a merchant, residing in New York City, and Straup is an oil and gas driller, and, at the time of trial, had been engaged in that occupation between seven and eight years in Converse County. They appear to have contemplated by their contract the performance of services by Straup in Converse County in

prospecting and developing oil and gas lands or claims in the interest of and as directed by Bijur. It is admitted that Bijur was the agent of eight other persons named in the answers, for whom he acted in directing the work to be done by Straup under said contract of employment.

It appears that sometime in July, 1903, under Bijur's instructions, Straup went upon the northeast quarter of Section 3 aforesaid, the same being the north half of the land previously marked, designated and recorded as "Gusher No. 2," and drilled a well of considerable depth thereon, resulting in striking a good flow of gas, the well being located near the southeast corner of said tract. Thereafter, also at Bijur's direction, on or about October 13, 1903, he moved the drilling machinery upon the premises here in controversy, and proceeded to drill an oil or gas well thereon at a point about 150 feet south from the well above mentioned, and thereby, October 22, 1903, discovered gas at a depth of about 480 feet. It is admitted in the pleadings that in drilling this last mentioned well and thereby striking gas Straup acted for and represented Bijur and the eight persons whose names are set out in the answer whom Bijur represented as agent. For and on behalf of the eight persons aforesaid, and in their names, a placer mining claim was located by Straup, acting by the direction of Bijur and as his employe, embracing as a part of the claim so located the land here in controversy, and it is admitted that the La Prele Oil Company is the successor in interest of said parties, though it is denied that it or they thereby acquired any interest in the land as against the palintiffs.

The fact that Straup's discovery of gas on the land in 1903 was made by him while employed by and representing Bijur and through the latter those he represented was alleged in the answers filed in the case and admitted by the replies, but that admission does not stand alone. A leading contention of the plaintiffs was and is that as they held a conveyance by Straup describing the premises as oil placer mining ground, located, held and recorded by

him, he and the defendants are estopped from questioning the validity of his original location or the right of plaintiffs to the possession of the land conveyed. The petition alleged in substance in that connection that in January, 1903, the said Straup induced the defendant, Bijur, to become associated with him for the purpose of jumping the said claim and thereby deprive the plaintiffs of the same, and to better carry out that purpose, they, with others, organized the defendant corporation, the La Prele Oil Co.; and further, that Straup, acting for himself and as the agent of the other defendants, with a large force of employes, during the terporary absence of plaintiffs and their employes from the claim, surreptitiously, secretly, and fraudulently carried upon the same a portable drilling rig, and commenced to drill an oil and gas well thereon, for the purpose of driving the same to gas or oil, which he did continue to do, and of depriving the plaintiffs of all use of their said land. The allegation that Straup acted for himself as well as agent is probably eliminated as the effect of the admission in the reply that he acted for and represented the other parties named in the answer; but the averment remains for whatever it may be worth, that his act was surreptitious, secret and fraudulent.

The petition alleged that through said Straup the original locators of the claim located in 1899, claimed by the plaintiffs as the source of their title, and their respective grantees, were in continuous and exclusive possession of the claim, while they held the same respectively, and that the plaintiffs went into possession of the tract in controversy upon receiving the conveyance thereof, and that from and after August 18, 1902, they immediately proceeded to work upon the claim for the purpose of developing the oil and gas which was underneath its surface, that their possession was open, exclusive and notorious, and that the land was not vacant and unappropriated when the defendants entered upon the same in October, 1903. The defendants by their separate answers denied the allegations as to the possession of the plaintiffs and their grantors.

The plaintiffs base their right to recover and their contention that the findings and judgment are erroneous upon three principal propositions. First: That the claim located in 1899, though previously lacking a discovery, was validated in that respect by the discovery upon the north forty acre tract embraced in the claim, through the well drilled thereon by or under the supervision of Straup as aforesaid, which discovery it is claimed inured equally to the benefit of the south forty acre tract that had been conveyed to plaintiffs, so as to perfect the title of the latter thereto. Second: That the plaintiffs were in actual possession of the forty acre tract in controversy, working and exploring the same for oil and gas, and it was therefore not open to exploration or location as a placer mining claim by others intruding upon their possession without their consent. Third: That Straup and the other defendants, including those for whom it is admitted he acted in making the discovery and location under which the defendants claim, were and are estopped by his deed to the plaintiff, Phillips, from claiming the premises or any right therein as against the plaintiffs.

Before proceeding to a discussion of the questions involved in these propositions, it will be well to state the effect of the evidence touching the actual possession of the land in controversy. There is very little if any conflict in the evidence concerning that matter. Counsel for plaintiffs in error has stated in his brief the facts as to their possession as strongly as the evidence will justify, and we quote what is there said:

"The land herein involved is in immediate vicinity of, and adjoining, other lands owned by the company represented by the said Phillips and his two brothers. A county road runs a little northeast and southwest near the center of the 40 acres in question. At all times involved in this case work was being done on the claim in which the plaintiffs in error were interested in the vicinity of this particular tract of 40 acres, and Phillips and his two brothers, also officers of the company they represented, and the

employes of the said company, were passing to and fro along
this county road two and three times a week and sometimes
oftener, and from the time the deed was given to Phillips,
the said three brothers and their employes doing work in
that vicinity were constantly watching the land in question,.
looking over it and going over it not only along the county
road, but over the land itself."

"In November, 1902, J. Bevan Phillips set a man, Mor-
ris, to work digging a hole south of the county road and
near the southeast corner of the sub-division in question,
the hole being 10 ft. deep and 6x4 ft. in lateral dimensions.
Plaintiffs in error assuming that Straup's affidavit made on
December 30th, 1902, showing that development had been
done covering the land in question for the year ending De-
cember 31st, 1902, did not consider that they were required
to do any assessment work for the year 1902; but for
the purpose of showing their possession of the claim and
to prepare a place for the better setting of their drilling
machine at a subsequent date, had this hole dug. The
man digging the hole did not work at it continuously, but
worked at it during parts of several days in the month of
November, 1902, the value of his work being computed at
about seven or eight dollars. There was no fence put around
this 40 acre strip, nor were any buildings erected on the
same by plaintiffs in error, nor was it the custom of pros-
pectors in that field, or of defendants in error, or of plain-
tiffs in error, to fence each claim, or to fence at all, the
claims which were located; but on October 21st, 1903, the
land was surveyed at the request of plaintiff in error, Whit-
ing, and the boundary line between the north 40 and the
south 40 of 'Gusher No. 2' was distinctly pointed out
by the surveyor, who had, about two weeks previous thereto,.
surveyed the same at the request of defendants in error,
Straup and Bijur, both of whom were present and both
of whom knew the said boundary line, though probably
this survey was made as early as June 28th, 1903."

"Nothing further was done by plaintiffs in error or on
their behalf, except to watch the land to keep it free from

entry by any prospectors, and especially by defendants in error; and their employes, who were working under the supervision of Phillips and his two brothers in the immediate vicinity, were instructed to keep a strict watch over the land in question. Other than doing these things and constantly watching the land themselves in going over it along the county road, nothing was done in the way of work by the plaintiffs in error until December 16th, 1903, at which time plaintiffs in error moved a portable drilling rig upon the 40 in question and commenced drilling a well at the hole. This well was dug down a distance of 185 ft. at an expenditure of $400. At this distance the work was stopped, on December 24th, to enable the drill to be taken off for the purpose of enabling assessment work to be done on adjoining claims for the year 1903."

"On January 5th, 1903, the plaintiff in error, Phillips, left for Europe, making his brother, Arthur, his agent in the meantime, to look after the claim in question, and under his supervision, in the absence of his brother, the work of watching the land to prevent its being occupied by what is known as 'claim jumpers,' was carried on, and in September, 1903, a man by the name of Greenwood was employed to work upon and look after the Mitcham and Ravensbury claims located by the said Phillips and others, and adjoining the claim in question, as well as to look after the claim in question, during which time arrangements were being made to bring a portable machine upon the land and to drill with the same at the hole in question, the said Phillips and his brothers not deeming that they had a right to use the machine which belonged to the company they represented, and which was being used in drilling upon the company's lands, without permission of the company, which had to be obtained from London, and as soon as this permission was obtained, the machine was brought upon the land at the time above stated. The particular reason why Greenwood was instructed to watch these claims was because notices of filing upon many claims in the immediate locality, including the claim in question, were

being made by defendants in error, and Greenwood was instructed particularly to watch the lines of the Mitcham and Ravensbury claims and of the claim involved in this case." The moving upon the premises of the drilling machine by the plaintiffs in error December 16, 1903, and the drilling therewith, occurred after the drilling of the well on the premises for Bijur by Straup, and after the commencement of this action.

There is no evidence that prior to his conveyance to Phillips, Straup or either of his co-claimants of the claim located in 1899 as "Gusher No. 2" had been in the actual possession or occupancy of the ground covered thereby. Though his assessment affidavits stated that work had been done on the land embraced in that claim, the locality and character of such work was not shown. In going upon the north forty of the claim in 1903 and drilling the well thereon, as well as upon the south forty, Straup testified that he went thereon and did, or rather, superintended the work for Mr. Bijur, and at his direction, and not for himself, and that is corroborated by the testimony of Bijur, and does not seem to be contradicted. According to their testimony such work was not done for the La Prele Oil Company, but the intention was at the time, so Bijur says, to organize a separate company, but subsequently the claim that was located was conveyed to the La Prele Company. Straup knew when he was engaged in drilling the second well that it was on the forty conveyed by him to Phillips, and it may be that Bijur also knew that fact. Straup and Bijur both knew, however, that there had been no previous discovery on the Gusher claim, and that the plaintiffs were not actually occupying or working the ground.

Aside from the fact of the knowledge of Straup and possibly of Bijur of the previous attempt to locate and appropriate the premises, and the fact that they entered thereon under the circumstances mentioned, from which their purpose might be inferred, there is no reasonable support in the evidence of the averments of the petition as to a collusive arrangement between them to deprive the plaintiffs

of the land in controversy.  We think the fact must be regarded as established upon the evidence that in all that Straup did in connection with drilling the wells aforesaid, and locating the claim or claims based upon the discovery or discoveries thereby made, he acted as the employe and under the instruction of Bijur, and not for himself.  Neither does the evidence sustain the averment that the entrance of the defendants upon the premises in controversy was secret or surreptitious, at least in the sense that it occurred in a manner calculated to mislead or take advantage of one actually occupying and exploring the same, or as distinguished from an act done openly and without concealment.

Lands containing petroleum or other mineral oils or a deposit of natural gas, may be located as placer claims under the mining laws.  (29 U. S. Stat. at L. 526; 2 U. S. Comp. Stat. 1901, p. 1434; 27 Cyc. 558.)  It is well settled that whether it be a lode or placer claim a discovery of mineral within the limits of the claim is essential to a valid location of a mining claim on the public domain. Though such a location must rest upon discovery and will not be complete until the discovery is made, it is not required, in the absence of intervening rights, that discovery shall precede the other acts of location.  If made prior to any intervening rights, though subsequent to marking the boundaries and recording the claim, the location, if otherwise good, will be validated at least from the date of discovery.  (1 Snyder on Mines, Sec. 354; 1 Lindley on Mines, 2nd Ed., Sec. 330; 27 Cyc. 556; Mining Co. v Tunnel Co., 196 U. S. 337.)  It is said in Snyder on Mines at the section cited that the location in such case will be good from the date of discovery, "and generally from the first act towards claim and appropriation,—this by relation." In Nevada-Sierra Oil Co. v. Home Oil Co., 98 Fed. 673, Circuit Judge Ross said in the opinion:

"To constitute a prior discovery which will support a location on public ground as an oil placer claim under the mining laws, the locator must have actually discovered

oil within the limits of his claim. Mere surface indications of the existence of oil therein, however strong, are not sufficient, nor is the existence of oil upon adjoining lands."

A placer claim is limited to twenty acres for each individual locator, and the aggregate that may be located as one claim by an association of persons is limited to 160 acres. When more than twenty acres is located as one claim, it is now settled that one discovery is sufficient for the entire claim. (27 Cyc. 559.) Upon a valid location a legal right of possession follows.

It is conceded that there was no discovery upon the Gusher claim located in 1899, nor on the land covered thereby, until the discovery that was made upon the north forty acre tract in September, 1903, by means of the well drilled thereon under the circumstances above stated. Waiving the question whether that discovery might have been held to validate the Gusher claim, not only as to the forty upon which it was made, but also as to the forty that had been conveyed to Phillips, if Straup had made it in his own interest for the benefit of such claim, which question we expressly refrain from deciding, the facts are that in entering upon the land at the time stated in 1903, in drilling the well and making the discovery, Straup acted not for himself, but as the employe and agent of Bijur and the other parties whom the latter represented.

Now, it is not required that a party shall act in person in locating a mining claim, but he may act by an agent, and a location may even be made by an agent without the knowledge of the principal, if there is a local rule authorizing it, or otherwise there may be antecedent authority or subsequent ratification. (1 Lindley on Mines, sec. 331.) And it is said that when a location is made by one in the name of others the persons in whose names it is made become vested with the legal title to the claim. (Id.) Not only was Straup acting for and in the interest of Bijur, but it appears that at or about the time of the discovery Bijur was present and personally directed his acts. We cannot conceive that under the circumstances, Straup could

have appropriated to his own benefit the work performed
by him at the expense and under the direction of his em-
ployer, so as to validate his own previous location, which
without a discovery was not valid.   The plaintiffs are not
in any better situation.   The discovery on the north forty
was made by strangers to the claim that had been located
in 1899, and in the interest of another claim antagonistic
thereto.   We are aware of no reason why it was not com-
petent for Straup to abandon that part of his previous
location not conveyed to Phillips, or to consent to others
entering upon and exploring the same in their own interest.
The fact that Straup did the work or superintended it
for the other parties did not constitute him the discoverer
in any other capacity than that in which he was employed
and acted.   His work, and his possession in the meantime,
amounted in legal effect to the work and possession of
those whom he represented.   It is clear, therefore, that
the discovery upon the north forty cannot be regarded
as having validated the previous location under which
the plaintiffs claimed.   That being true, the plaintiffs were
not holding the premises in controversy under a valid
location, and if they had any right to the land, it was
because they were in such actual possession thereof as to
prevent others from making a valid location thereon, or
because the defendants were estopped from challenging the
validity of the previous location as against them.

Taking up first the question of estoppel.   If it be con-
ceded that Straup would be estopped by reason of his
conveyance from denying the validity of the former lo-
cation, that would not estop the other defendants.   The
possession was not awarded to him, nor was he found by
the trial court to be entitled to possession.   It was found
and so adjudged that the right to possession had vested in
the other defendants who had filed a separate answer.   In
Straup's separate answer he practically disclaimed any in-
terest, and alleged that his acts were performed as the
paid employe of Bijur, and that the La Prele Oil Company

was entitled to possession as the successor in interest of the locators.

The company and Bijur were not claiming under Straup, nor under the location of 1899, nor any previous location made or held by Straup in his own interest. They were not in privity with him as to such previous location. If they knew anything about it they knew that there had not been a discovery to support that location, and that the land was therefore vacant and unappropriated, except so far as it might be in the actual possession of some one. The employment of Straup to do the work of exploration, discovery and location for another claim did not bring Bijur and those whom he represented into privity with him, so as to render them bound or estopped by his former acts or conveyance. We find no evidence of fraud in the conduct of the defendants. We think it cannot be held that because Straup had once assumed to make a location of the land without having made a discovery such as would justify or validate it, and to have conveyed the premises or a part thereof as a placer claim, he could not in good faith be engaged by others as an agent or employe to enter for them into peaceable possession of the premises so conveyed, and at their expense in their names and behalf explore the same for mineral and make a valid location thereon as against those claiming under his conveyance. The doctrine of estoppel does not go that far. Neither does the fact that Straup was a stockholder of the La Prele Oil Company, to whom the claim located in 1903 covering the premises in controversy had been conveyed by the locators, estop that company from claiming the premises or questioning the right of the plaintiffs thereto. The company did not acquire any right or privilege from Straup, nor was he one of the locators of the claim conveyed to it; and there is nothing in the evidence upon which it could be held that the company had entered into a collusive or fraudulent agreement with Straup for the purpose of assisting him to regain the property conveyed to Phillips through a new location and

thereby avoid the effect of his conveyance. Straup acquired no new interest, but by his acts as agent for others lost whatever interest in the Gusher claim he had previously retained.

This brings us to a consideration of the question whether the predecessors in interest of the defendant company were prevented by the facts as to the possession of the plaintiffs from peaceably entering upon the premises in controversy through their representatives, Bijur and Straup, or otherwise, and exploring the same for the purpose of making a location under the mining laws.

Although a valid location is necessary to vest the legal right of possession in a claimant to land under the mining laws, yet possession without location is good as against a mere intruder. As a general rule, the mere naked possession will not avail against a valid location peaceably made, and hence it confers no right against a *bona fide* prospector who enters upon the land peaceably for the purpose of acquiring title thereto as a mining claim. It is well settled also that the right to make a location cannot be based upon a trespass. (27 Cyc. 560 and cases cited.) But owing to the necessity of a discovery upon which to base the location of a mining claim, and the policy of the law to avoid breaches of the peace through conflicts between rival prospectors, the rule has been anunciated and may be regarded as well settled that where one seeks in good faith to make a location, he is entitled to exclusive possession of the land sought to be located for a reasonable time to complete his location, or for such time as may be allowed by the customs or rules of miners, or the statutes of the state or territory. (27 Cyc. 559; 1 Snyder on Mines, secs, 233-235; 1 Lindley on Mines, 2nd Ed., sec. 219.)

To be available for the purpose aforesaid, however, the possession, where that is alone relied on, must be actual, and connected with active diligent work of exploration with the *bona fide* intention, if mineral is found, to make a location. (1 Snyder on Mines, sec. 236; Miller v. Chris-

man, 140 Cal. 440 (73 Pac. 1083); New England & Coalinga Oil Co. v. Congdon, (Cal.) 92 Pac. 180; 1 Lindley on Mines, 2nd Ed., secs. 216-219.)

In Miller v. Chrisman, *supra*, after stating that a discovery might follow the other acts of location and thus make the location good as against all the world, saving those whose *bona fide* rights have intervened, the court said:

"One who thus in good faith makes his location, remains in possession, and with due diligence prosecutes his work toward a discovery, is fully protected against all forms of forcible, fraudulent, surreptitious, or clandestine entries and intrusions upon his possession."

And in New Eng. & Coalinga Oil Co. v. Congdon, *supra*, it was said: "But, where the alleged locator has not made a discovery and has not retained possession for the purpose of prosecuting work looking to a discovery, his mere posting of notice and marking the boundaries upon the ground will not serve to exclude others who may peaceably enter upon the land which he is not actually working or occupying."

Tested by the above rules it is clear that at the time the predecessors in interest of the defendant company, through their agents Bijur and Straup, entered upon the land, erected the drilling machinery thereon, and thereby made the discovery of gas, the plaintiffs were not maintaining, and for some time at least had not maintained, such a possession as unaided by a valid location would exclude other *bona fide* locators or prospectors. They were neither in the actual possession, nor occupancy of the land, nor engaged in prospecting or exploring the same for mineral. Although they acquired whatever rights they had under the conveyances aforesaid in August, 1902, the only actual work done by them upon the premises was the digging the hole above mentioned in November of that year which confessedly was not expected to uncover a deposit of oil or other mineral, but was intended chiefly as it seems to show their claim of possession, and also to serve as preliminary to the erection of a drilling machine. But, whatever the reason

for the delay, more than a year elapsed after digging the hole before they took a machine upon the premises and commenced the actual work of exploration, and, in the meantime, the parties under whom the defendants claim had peaceably gone upon the land and made their discovery and location; and when they went upon the land it is conceded and indeed alleged by the plaintiffs that the latter and their employes were absent therefrom.

Neither the fact that in going to and fro between other lands or places the plaintiffs frequently crossed the land by traveling along the county road thereon, nor that they watched the land to see that it was not interfered with by others, is entitled to much consideration as showing actual possession of an incomplete mining claim. As said in Mining Co. v. Tunnel Co., 196 U. S. 337, the principal thought of the chapter of the Federal statutes concerning the location of mining claims is the exploration and appropriation of mineral. Merely watching a tract of land or an intended claim for a considerable time as in this case to see that it is not intruded upon by others, without the performance of any work calculated to assist in its exploration or development, will not conduce materially to either the discovery or appropriation of mineral. In the case of New Eng. & Coalinga Oil Co. v. Congdon, *supra,* it appeared that a watchman had been employed by a party to watch the land in controversy as well as others, which is the situation here, and it was held insufficient to show actual possession, and the trial court was held to have been justified in concluding that there had not been actual possession, but merely a pretense of occupation without any intention of actually proceeding to development for mineral oils.

For the reasons above stated we are of the opinion that the plaintiffs failed to show a right to the premises as against the defendant the La Prele Oil Company, or a right to an injunction as prayed for, and that the district court properly found against them. The fact that Bijur as well as the La Prele Oil Company was adjudged to be entitled to possession is not material so far as the plaintiffs

are concerned, and it does not appear that Bijur claims adversely to or independently of the company. The judgment will be affirmed. *Affirmed.*

BEARD, J., and CARPENTER, District Judge, concur.

HON. CHARLES E. CARPENTER, Judge of the Second Judicial District, sat in the place of SCOTT, Justice, who, as District Judge, had presided at the trial below.