## PHILLIPS ET AL. v. BRILL ET AL.

MINES AND MINERALS—PLACER CLAIM—OIL AND GAS—ADVERSE SUIT —JUDGMENT—DISCOVERY—DISCOVERY POINT PARTLY ON TWO ADJOINING CLAIMS—RIGHT OF POSSESSION BEFORE DISCOVERY.

1. In an adverse mining suit the parties, respectively, stand upon their own rights, and if neither party establishes a right to possession a finding and judgment to that effect is required.
2. A mining claim within which the requisite deposit of mineral is discovered will not be rendered invalid by the mere fact that the discovery shaft, or the discovery well in the case of an oil claim, is only partly upon the claim and partly upon another.
3. In the absence of anything to the contrary, the fact that one-half the diameter of the discovery well at its surface is on the land located as an oil placer mining claim is sufficient showing of a discovery within the claim.
4. The surrounding indications being sufficient to justify the exploration of a tract of public land with the expectation of finding oil or gas underneath the surface, a party who has properly staked the ground, put up the usual notice, and recorded the claim has the right to take actual possession, and continue in such possession for a reasonable time, while diligently at work thereon exploring the ground for the purpose of discovery.
5. In such case the previous acts will indicate, not only the extent of surface intended to be appropriated, but the extent of the actual possession, and the locators will be protected against the forcible, fradulent, surreptitious, or clandestine entries or intrusions of others.

6. After performing the other acts of location a delay in taking the necessary possession to prevent a valid location by intruders is not material, provided that at the commence-. ment of such possession there are no intervening rights.

7. Defendants had performed the necessary acts in locating two adjoining oil placer claims, except that of discovery, and later moved an oil drilling machine upon the claim in dispute and proceeded diligently to drill a well upon the dividing line between it and the other claim for the purpose of discovery on both claims. The plaintiffs having made a discovery on an adjoining tract included the land in controversy in their location. *Held,* that while the defendants were in actual possession, as ·aforesaid, it was not competent for the plaintiffs to project their location over the premises held by the defendants, and it would then be immaterial, so far as the rights of plaintiffs to the ground in controversy is concerned, whether or not the discovery of the defendants by means of the well aforesaid could be employed to obtain title to both their claims.

8. Judgment reversed and the case remanded for new trial on the ground that the possession of the mining ground in controversy seemed to have been awarded to defendants in view of the supposed insufficiency of the one discovery well of the plaintiffs to support their two locations and the fact that it had already been credited to one of the claims, without considering the question whether the location of the defendants had been made while the plaintiffs were in actual possession and diligently exploring the claim in dispute for the purpose of making a discovery.

[Decided May 25, 1908.]    (95 Pac. 856.)

ERROR to the District Court, Converse County; HON. RICHARD H. SCOTT, Judge.

This was an adverse mining suit brought by Philip M. Brill, Henry Levy, Joel Goldenkranz, Otto Sartorious, John Hull, Jr., A. M. Bijur, Fred Winkler, and Abraham Bijur against Lawrence C., Arthur W., Edith M. B., and Jennie Phillips. The facts are stated in the opinion.

*W. R. Stoll,* for plaintiffs in error.

Plaintiffs in error having located their claim February 10, 1903, had until the end of the year 1904 within which to do their first annual assessment work. (Supp. to U. S.

Rev. Stat., Vol. 1, p. 276; Barringer & Adams M. & M., 263, 268; 2 Lindley on Mines, Secs. 624-625.) Actual possession of mineral land is good against a mere intruder, and the locator in possession of a mining claim attempting to discover mineral thereon may protect his claim from the intrusion of others. If he permits another to enter thereon he will be estopped from asserting priority against a second claimant if the latter discovers mineral first, but where he does not acquiesce in the act of the second claimant and is rightfully in possession, he cannot be ousted therefrom by the mere fact that the second claimant discovered mineral first. (1 Lindley on Mines, Secs. 216-219; Barringer & Adams M. & M., 216, 318, 319; Crossman v. Pendery, 8 Fed. 693; Cosmos Expl. Co. v. Oil Co., 112 Fed. 4; Weed v. Snook, 144 Cal. 439.) Land is not vacant and unoccupied within the meaning of the mineral laws when it is covered by a location and in possession of the locator or his transferee. It is not necessary for the locator or his transferee of an oil or gas placer claim to have discovered, or to be actually in the process of drilling for, either oil or gas upon the claim before it can be said that the claim is lawfully in his possession. All that is necessary is that the locator or transferee be in possession of the claim. The law merely requires in this respect that, as between the parties to the suit at the time of the entry by the subsequent locator, the previous locator or his transferee was in possession of the property; that he was in good faith claiming possession and the right of possession, and was doing so under color of title. Discovery need not necessarily precede location. A subsequent discovery will relate back to and perfect the location, and the rights of the locators are the subject of sale and transfer before as well as after discovery. Prior locators or their transferees in actual possession and engaged in the ordinary preparations for the purpose of developing the land for the minerals supposed to be therein contained, are protected by law against any clandestine subsequent entry and location made prior to the actual discovery of mineral therein. (Weed

v. Shook, *supra*; Cosmos Expl. Co. v. Oil Co., *supra,* 190 U. S. 301; Kern Oil Co. v. Clarke, 30 L. D. 550; Oil Co. v. Clarke, 30 L. D. 570; Cosmos Expl. Co. v. Oil Co., 104 Fed. 20; Oil Co. v. Oil Co., 98 Fed. 673; Oil Co. v. Miller, 97 Fed. 681; Miller v. Chrisman, (Cal.) 73 Pac. 1083; Moffat v. Blue River &c. Co., 33 Colo. 142.)

The discovery well of the plaintiffs in error located and drilled upon the boundary line between their two claims, one-half of the diameter of the well at its surface being on each claim, was sufficient upon the discovery of oil thereby to validate the location of each claim, for the reason that it amounted to a discovery within the limits of each claim. The government cannot be injured by a discovery in that manner for both claims when the condition of the law is complied with, viz.: that mineral be discovered within the limits of each claim, it being demonstrated by the discovery well that the mineral sought is within the limits of each claim. The discovery by the well in question was sufficient, therefore, because the requirement of the law was complied with. (Larkin v. Lupton, 144 U. S. 19; 1 Lindley on Mines, Sec. 337.) The statement in Lindley in Section 337 which is relied on by defendants in error that a discovery is not susceptible to subdivision for the purpose of two locations having a common end line that bisects the discovery shaft, does not seem to be sustained by the authorities cited by the author, with the exception of the case of Poplar Creek &c. Mines, 16 L. D. 1, decided by the Secretary of the Interior. We submit that it is difficult to understand the process of reasoning upon which it was concluded in that case that a fraud was perpetrated upon the government. What possible difference could it make to the government whether it received the full amount of money for the two claims from one person or two persons? Mineral was discovered, presumably, within the limits of each claim. The necessary amount of work was done, presumably, to develop each claim. How can it be claimed, then, that a fraud was perpetrated upon the government any more than if instead of one person applying for a patent, one

of the original locators had done the necessary work on his claim, and the other the necessary work on his, and each had applied for a patent? In such case, the government would have been obliged to award a patent to each of the locators, and it would have received no more money than was received from the single applicant in the case mentioned, and no more land would have been taken, nor would there have been any greater demonstration of the existence of mineral. It is submitted that the decision of the Secretary above cited is illogical in its reasoning and incorrect in its conclusion.

*F. H. Harvey* and *Burke & Clark,* for defendants in error.

Prior to the trial of this case it had been claimed that the discovery on the dividing line between the two claims of plaintiffs in error inured to the benefit of the Mitcham claim, and it was applied by the court to that claim and held that it could not inure to the benefit of both claims, and having been applied to one it left the claim here in controversy without a discovery, and, therefore, invalid. A second claimant to mineral land is not prevented from making a location by the mere fact that the first claimant "is making preparations" for developing the same. So far as oil and gas locations are concerned, the location and subsequent discovery by defendants perfects their title if there are no intervening rights, and if during the time between the date of location and discovery they have been actively at work drilling to discover oil, or at least actively engaged in such work at the time an adverse location is attempted, their possessory right will be protected. The discovery well upon the boundary line between the two claims of plaintiffs in error cannot be used for the purpose of validating both locations. It amounted to but one discovery and, therefore, could apply to but one location. (2 Lindley on Mines, Sec. 337; Poplar Creek &c. Mines, 16 L. D. 1; Reynolds v. Pascoe, (Utah) 66 Pac. 1064; McKinstry v. Clark, 4 Mont. 370; Morrison's Mining Rights, 8th Ed., 34.)

If the contention of plaintiffs in error should be sustained it would follow that four claims could be validly located upon a single discovery made at the point of convergence of the four separate claims. The case of Larkin v. Upton, 144 U. S. 19, cited by plaintiffs in error is not within the facts of the case at bar.

POTTER, CHIEF JUSTICE.

This is an adverse mining suit, involving the right of possession to lots 5 and 6 in Section 2, otherwise described as the South half of the Southwest quarter of said section, in Township 32 North, Range 73 West, situated in Converse County, this State. The defendants in error, having filed in the United States Land Office an adverse claim against the application of the plaintiffs in error for a patent to the premises in controversy as an oil placer mining claim, brought this suit in support of such adverse to recover possession of the premises, damages for the alleged wrongful detention of the same, and expenses incurred in supporting the adverse claim. The district court found that the defendants in error, plaintiffs below, were entitled to possession, and entered judgment awarding the same to them. The case comes here on error.

It is assigned as error that the findings, decision and judgment are not sustained by sufficient evidence and are contrary to law, and on that ground that the court erred in overruling the motion of the defendants for a new trial. To avoid confusion the parties will be referred to hereafter by their title respectively in the district court, the defendants in error as plaintiffs, and the plaintiffs in error as defendants.

· The plaintiffs, eight in number, claim the premises under a location on October 29, 1903, embracing the same as a part of an oil and gas placer mining claim designated as the "La Prele No. 2." The defendants, four in number, claim under a loaction of the premises on February 10, 1903, as an oil placer mining claim named the "Ravensbury."

The plaintiffs allege in their petition, in addition to the other facts usually alleged in an action of this kind, that on or about November 1, 1903, the defendants wrongfully entered upon the premises here in controversy, and have ever since wrongfully withheld possession of the same from the plaintiffs.

It appears that there are recognized indications of oil throughout the particular section of country where this land is situated, and that previous to February 10, 1903, some of the defendants, for themselves or a company in which they were interested, had discovered gas in wells drilled by them upon other lands in the neighborhood, one of such wells being about half a mile and another about three-quarters of a mile from the land in contest.

On the date last mentioned. the Ravensbury claim was staked by the defendants, and a discovery and location notice posted thereon, and within the proper time a certificate of location was recorded, but without previously making an actual discovery of either oil or gas within the limits of the claim. They continued to keep the land more or less under their observation to see that it was free from intruders, and in June arranged for an employe to perform some work upon it, in connection with an adjoining claim also located by them, known as the Mitcham; and in August and September of the same year, 1903, the party so employed worked upon the land at intervals, digging a hole ten or eleven feet deep, and clearing off some of the sage brush. He was observed at work upon the premises on September 8, and also between the 16th and 18th of that month, by the agent who made the location for the plaintiffs, and who was then engaged in drilling for them upon neighboring ground. It is stated in the evidence on the part of the defendants that the above work was done as preliminary or preparatory to erecting a drilling machine, and to demonstrate the character of the soil beneath the surface.

On the 29th day of October, 1903—the most explicit testimony fixing the time as "on or about" that date, though it seems to be accepted or understood by counsel as the cor-

rect date, the defendants moved upon the premises a port-
able drilling machine, and commenced to drill a well upon the
boundary line between their two adjoining claims, the Rav-
ensbury and Mitcham.   They continued drilling until, on
December 2, 1903, a showing of gas was found at a depth
of 502 feet.   Expecting a larger flow upon drilling deeper,
they suspended operations for a time for the purpose of
securing necessary appliances with which to close the well
should it be found expedient to do so.   The drilling was
again proceeded with in the following February, and at the
depth of about 540 feet a large flow of gas was discovered.
Thereupon the well was cased and closed, and the drilling
machine taken off the premises.   The well thus drilled was
bisected by the dividing line between the two claims afore-
said located by the defendants, the north line of the Ravens-
bury being the south line of the Mitcham.   At the surface
the well was about fifteen inches in diameter, and eight inches
at the depth where gas was discovered.

It appears that prior to the location under which the plain-
tiffs now claim and probably in September, 1903, they, or
at least their agent and representative, had caused the lo-
cation of 800 acres of land in a group of claims known as
the "Ethelton" claims, each claim being given a separate
number, one of which embraced the land covered by the
Ravensbury and Mitcham claims, but the plaintiffs do not
in this case, rest any right upon the "Ethelton" locations.
After the making of such locations, and before the location
upon which their present claim is based, plaintiffs were no-
tified in writing by the defendants, by a notice dated October
23, 1903, to the effect that the defendants claimed exclu-
sive and undisturbed possession of the land here in con-
troversy, which was properly described and stated to be
known and recorded as the "Ravensbury" oil placer mining
claim located February 10, 1903, and that the plaintiffs were
required not to trespass thereon or interfere in any way
with the defendants or their peaceable possession and work-
ing of said claim.

(2)

On the 13th day of October, 1903, the plaintiffs, through their agent, went upon the southeast quarter of the southeast quarter of Section 3, said township and range, which is the forty acre tract adjoining the Ravensbury claim on the west, and proceeded to drill thereon near the northwest corner thereof, an oil or gas well, and on the 22nd day of that month discovered gas. Based upon that discovery the claim known as "La Prele No. 2" was located for the plaintiffs on October 29, the said claim including the forty acre tract upon which the discovery last aforesaid was made, together with the land covered by the Ravensbury claim and here in controversy, and another forty lying immediately north of the east forty of the Ravensbury, and being the east forty of the Mitcham claim, as we understand the situation of the latter claim. The location of plaintiffs was so made by staking the boundaries or corners of the claim, and putting up a discovery stake and location notice on the claim; and a certificate of location was recorded within the required time.

No special findings were made and, therefore, the record itself fails to disclose the particular ground of the decision and judgment, but counsel agree in their briefs that the trial court held that the discovery in the well drilled by the defendants upon the boundary line between their two claims, the Mitcham and Ravensbury, could inure to the benefit of but one, and that since they had claimed upon the trial of the case involving the Mitcham that such discovery perfected that claim, they had thereby elected to hold the Mitcham claim upon that discovery, and it woud be applied to that and denied to the Ravensbury. Taking this admission by counsel as showing the point upon which the case here was decided, we would be justified in concluding that the court either disregarded the question as to the effect of the possession of defendants upon the location of plaintiffs, or found that such possession was sufficient to enable them as against the plaintiffs to validate the Ravensbury by discovery, in case the discovery in question could be credited to that claim.

Irrespective of the effect of the discovery well for the purpose of validating or ultimately obtaining title to both claims, the character of the possession by defendants of the premises in controversy at the time the plaintiffs made their alleged location is a vital question in the case, for upon its determination depends the validity of the location of plaintiffs, and this is an adverse suit in which the parties respectively stand upon their own rights, and if neither of the parties should establish a right to possession a finding and judgment to that effect would be required.

We take it to be conceded that if no adverse intervening rights had been acquired the discovery by defendants would be sufficient to validate at least one of their locations, but it is insisted on behalf of the adverse claimants, the plaintiffs, that it could validate only one, and that it should be applied to the Mitcham, for the reason that on the trial of a case involving that claim which apparently immediately preceded the trial of the present case on the same day, the defendants had claimed the discovery to have perfected the location of the Mitcham claim. There is no showing that the judgment in the other case was rendered before the trial of the case at bar, and we suppose that it was not. The record discloses nothing with reference to the other case, except that on the cross examination of Arthur W. Phillips, one of the defendants, he admitted having testified on the trial of the Mitcham adverse that the discovery well perfected the Mitcham claim. The application of the discovery would, therefore, be made to depend upon the accident of the precedence in the time of taking evidence in the two cases, since the witness aforesaid, as well as the other defendants, also claimed that the discovery perfected the Ravensbury claim.

It is difficult to perceive in this an election as to either claim on the part of the defendants, or any reason for holding that they had made an election. It is apparent that they expected to maintain a right to both claims upon the same well, and that until the cases were decided, and they were tried to the court without a jury, there was no selection

or choice between the two claims, and further, that the choice was the act of the court and not of the defendants. At least if the defendants at any time, upon learning that they would be permitted to hold but one claim, expressed a preference as to either, the fact is not disclosed or in any way indicated by the record. It appears in the testimony that both claims were located the same day, but it does not appear which one was first staked, if there was any difference in the time.

The case involving the Mitcham claim is not before us, nor does it appear that the case has been brought to this court. Except that it is referred to as the "Mitcham adverse," there is no information in the record concerning it. We do not know who the parties to the case were, nor whether it was of such a character and so disposed of as to place the defendants in a position to obtain title to the claim, and it is, therefore, purely a matter of conjecture in this case whether or not they will or can secure title to it. It is doubtful, therefore, to say the least, whether the condition of the case is such as to permit this court to dispose of it upon the theory that the defendants have already secured a title or an adjudged right to the title to another claim upon the same discovery well, even if that fact would control the decision, especially as it is probable, if not apparent, that when the case was tried and submitted, the right to the other claim had not been determined. Should the principle be conceded that the same discovery well would authorize a single location only, the one to which the discovery would be credited ought not to depend, it seems to us, solely upon the fact that the testimony in one case preceded the other, or the arbitrary act of the court. It occurs to us that the more correct practice, at least in the absence of an election, would be to ascertain which location was first, and thus adopt a rule that might be uniform and applicable to any similar case. Therefore, if the reason for the decision of the trial court in the case at bar is correctly understood by counsel, we would hesitate to approve the principle upon which the discovery was applied as between the two locations. Hence it is to be seriously doubted upon

that consideration alone whether the question as to the right
to validate the two locations by sinking the one well upon
the common boundary line is a material inquiry in the pres-
ent condition of the case.

It is clear, however, that there had been no selection be-
tween the two claims at the time the case at bar was tried
and submitted. In the meantime the defendants were hold-
ing the Ravensbury and claiming a completion of its lo-
cation by the discovery well in question, which was situated
partly on that claim. Aside from the disputed question
as to the right to make two locations upon the discovery
in the one place upon the common boundary line, the fact
that the well is only partly on the Ravensbury would be
immaterial if in fact it resulted in a discovery within the
limits of the claim. That is to say, eliminating the ques-
tion of two locations, a claim within which the requisite
deposit is discovered will not be rendered invalid by the
mere fact that the discovery shaft, or the well as in this
case, is only partly upon the claim and partly upon another.
(Healey v. Rupp, 28 Colo. 102; Larkin v. Upton, 144 U. S.
19.) Therefore, the defendants might have made a valid
location of the Ravensbury through the discovery aforesaid,
assuming that the point of discovery was within the limits
of the claim.

All that the record discloses as to the precise point of
discovery is the surface situation of the well. In the ab-
sence of anything to the contrary, we think the fact that one-
half the diameter of the well at its surface is on the claim
is sufficient showing of discovery within the claim. Al-
though it was argued that the well may not have followed
a straight line in its descent and that its course may have
deviated from such line and away from these premises, there
is not the slightest evidence to indicate such a condition, and
we are not, therefore, at liberty to infer that it exists.

It is not disputed that when the defendants undertook to
locate the Ravensbury claim, in February, 1903, the land
was vacant and unappropriated and a part of the public do-
main. At that time they performed all the necessary acts of

location, except that of making discovery. The surrounding indications were unquestionably sufficient to justify them in prospecting the premises with the expectation of finding oil or gas underneath the surface. Having staked the ground, put up the usual notice, and recorded the claim, the defendants had the right to take actual possession and continue in such possession, at least for a reasonable time, while diligently at work thereon exploring the ground for the purpose of discovery. The previous acts of location would indicate not only the extent of surface intended to be appropriated but the extent of such possession, and the locators would be protected against the forcible, fraudulent, surreptitious, or clandestine entries or intrusions of others. The rule upon this subject is discussed in the case of Whiting et al. v. Straup et al., this day decided, and the authorities are there cited. A delay in taking the necessary possession to prevent a valid location by intruders would not alter the situation, provided that at the commencement of such possession there were no intervening rights.

Regardless of the sufficiency of the acts of defendants prior to taking the drilling machine upon the premises to constitute such a possession as would prevent a location of the ground by others, it is beyond controversy that from the time they went on the ground with the machine they had actual possession and proceeded diligently with the work of exploration until a discovery was made. Indeed, the petition alleges them to be in possession, and designates the commencement thereof as on or about November 1, 1903.

It is undisputed also that in so taking possession the purpose of the defendants was to prosepct and develop the Ravensbury claim as much as the Mitcham, and the well was, in fact, drilled partly upon the former claim. From the time of such possession, therefore, they were actually prospecting the claim under such circumstances that upon making discovery in the well being drilled it might complete and validate it. It follows that if such possession began before the plaintiffs made their location, the ground was not vacant and unoccupied, and that location would not

have been valid. It is a general rule that a mining location to be valid must be good when made, and that a right cannot be initiated by a trespass. While the defendants were in actual possession as aforesaid, it was not competent for the plaintiffs upon their discovery made upon adjoining ground to project their location over the premises so held by defendants. (Weed v. Snook, 144 Cal. 439; 77 Pac. 1023.) And it would then be immaterial so far as the rights of plaintiffs are concerned whether the discovery of the defendants can be employed to obtain title to both their claims. That question is equally immaterial if the location of plaintiffs preceded in point of time the taking possession by defendants, for in that event the location of plaintiffs would have precedence. Upon the above supposed facts as to possession this would not be be a case of prior locators of a claim invalid for some reason relying upon constructive possession, and not actually engaged in diligently perfecting their location. In such a case a different rule might apply to a subsequent location.

It seems to be uncertain whether the court disregarded entirely the question of possession on the part of the defendants, or decided the case upon the theory that they were in possession when the plaintiffs located their claim, but had lost their right upon being awarded the Mitcham claim. The evidence is not clear as to which act preceded the other in point of time, the taking of possession by defendants or the location of the claim of plaintiffs, both having occurred the same day—October 29, 1903, leaving out of consideration the acts of possession on the part of the defendants preceding that date, and it ought to be first passed upon by a trial court.

If the contention be correct that the discovery of defendants is capable of supporting a single location only, and that it should be credited to the Mitcham and not the Ravensbury, and if it should appear that the location of plaintiffs was invalid because made over the rightful possession of defendants, then neither of the parties would have the

right of possession, and that would have to be the finding and judgment.

The conclusion seems to us unavoidable that the trial court may have adjudged the right of possession in the plaintiffs, notwithstanding that they may have attempted a location when the land was not open thereto; and for that reason the case ought, in our opinion, to be remanded for new trial.

It is not necessary, therefore, to consider the question chiefly and ably argued, whether the discovery well upon the boundary line between the two claims of defendants, assuming it to have demonstrated the presence of gas underneath the surface of each claim, would be sufficient discovery to authorize or validate both locations. This much may be said. The question in relation to placer claims does not seem to have arisen in any reported case. In reference to lode claims the text writers do not agree upon the question. Lindley states the proposition, adopting the syllabus of a decision of the Land Department, that a discovery is not susceptible of sub-division for the purpose of two locations having a common end line that bisects the discovery shaft. Snyder, on the other hand, says that two locations may be made upon one discovery, a portion of the vein being found within the limits of each claim, and he states his reason for thinking that to be the correct principle. (1 Lindley on Mines, 2nd Ed., Sec. 337; 1 Snyder on Mines, Secs. 351, 356.) The following are the only cases appearing to touch the question: Larkin v. Upton, 144 U. S. 19; Poplar Creek Consolidated Quartz Mine, 16 L. D. 1; McKinstry v. Clark, 4 Mont. 393; 1 Pac. 759; Upton v. Larkin, 7 Mont. 449; 17 Pac. 728; Reynolds v. Pascoe, (Utah) 66 Pac. 1064; Healey v. Rupp, 28 Colo. 102; 63 Pac. 319; 21 Morr. Min. Rep. 117. The case of Reynolds v. Pascoe did not involve a discovery on a common boundary line, and merely holds in this connection that it is not permissible for a party to locate two or more claims over the same discovery point. In Healey v. Rupp, there was a shaft partly on each of two adjoining claims, but it

does not appear that the two claims had been located upon or depended upon the discovery in the same shaft.

For the reasons above stated the judgment will be reversed, and the cause remanded for new trial.

BEARD, J., and CARPENTER, District Judge, concur.

HON. CHARLES E. CARPENTER, Judge of the Second Judicial District, sat in the place of SCOTT, Justice, who, as District Judge, had presided at the trial below.