DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF WYOMING

[APRIL TERM, 1922]

## SPARKS, ET AL. v. MOUNT, ET AL.
### (No. 1009; Decided July 20th, 1922, 207 Pac. 1099)

MINES AND MINING— OIL PLACER LOCATIONS—POSSESSION OF LOCATOR
IN DILIGENT PROSECUTION OF WORK AND DISCOVERY EXTENDS OVER
ENTIRE AREA OF CLAIM—TRESPASS—MAINTENANCE OF FENCES OR
GUARDS UNNECESSARY TO PROTECT POSSESSOR.

1.  No possession having been taken nor an actual discovery
    perfected under an oil placer location, the lands were
    open to entry under the mineral laws of the United
    States by a subsequent locator.
2.  A second locator of mineral lands under the oil placer law
    who took possession thereof, posted and recorded his
    notice of location, staked the ground and continued dili-
    gent prosecution of work thereon for purposes of dis-
    covery, was entitled to possession of the entire area of
    the claim as against a prior locator or his successors in
    interest who had neither taken possession nor perfected
    a discovery under such prior location.
3.  No adverse rights can be initiated by a trespasser as
    against one lawfully in possession of a mineral claim.
4.  A mineral locator in possession of a claim in good faith
    is not required to maintain a fence or guard at the boun-
    daries thereof in order to protect his possession against
    trespassers.

APPEAL from District Court, Weston County, HON. E. C. RAYMOND, Judge.

Action by G. F. Sparks and another against J. D. Mount and others, to restrain acts of trespass upon an oil placer claim. The material facts are stated in the opinion.

*R. E. McNalley & E. E. Wakeman* for plaintiffs and appellants.

A bona fide locator of a mineral claim who has complied with the requirements of law and continued in possession thereof and in a diligent prosecution of work toward a discovery of mineral, will be protected against intrusion and trespass. (Whiting v. Straup, 95 Pac. (Wyo.) 855; Phillips v. Brill, 95 Pac. 859.) The evidence of possession and diligent prosecution of work by plaintiffs is undisputed; plaintiffs protested against defendants' acts of trespass; defendants had full notice and knowledge of plaintiffs' possession; a mere delay of five days in commencing suit on behalf of plaintiffs to enjoin acts of trespass could not work a forfeiture of plaintiffs' rights; defendants made no discovery under the alleged prior location of the claim; a discovery of minerals sufficient to perfect a location must be such a discovery as would justify a person of ordinary prudence in making further expenditure of labor and means with a reasonable prospect of success, either in developing a mine or, in case of an oil claim, of securing oil in a paying quantity. (U. S. v. Ohio Oil Co., 240 Fed. 996.) Under the evidence the judgment of the Court below is wrong and should be reversed.

*Hagens & Murrane,* and *Greenwood & Dunbar,* for defendants and respondents.

The facts in the present case are readily distinguishable from the facts in Whiting v. Straup cited by appellants. The entry of defendants was neither forcible, fraudulent

nor surreptitious. (Miller v. Chrisman, 73 Pac. 1084. See also Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 736; Attherton v. Fowler, 96 U. S. 513; Lindley on Mines, Sec. 216, p. 476; Ferris, et al. v. McNally, et al., 121 Pac. 889.) Defendants entered upon the land peaceably and without force and they engaged in the drilling of an oil well, prosecuted the same with diligence unmolested and undisturbed until a discovery of oil in commercial quantities was made upon the land. This gave defendants legal title to the lands and a right superior to plaintiff. The judgment of the trial court should be affirmed.

BLUME, Justice.

The parties will herein be referred to in the same manner as in the case below. It will not be necessary, for the purposes of this case, to set forth in detail the rights of the defendants as between themselves. There is some conflict in the evidence as to whether or not the defendants had discovered oil on December 22, 1919, but for the purposes of this case, we shall have to treat that as an established fact. With that so taken, the evidence in this case is substantially undisputed, and we must determine as to whether the judgment herein was warranted thereunder. The testimony, so far as it bears materially on the questions here involved, is in substance as herein set out. The predecessors in interest of the defendants filed an oil placer location on the SE ¼ of Section 6, T. 46, N. R. 63, Weston County, Wyoming, on February 16th, 1918. No possession of the land was taken under this location until about December 15th, 1919, and no discovery is claimed thereunder until December 22, 1919.

On August 29th, 1919, the predecessors in interest of the plaintiffs made an oil placer mining claim on the same land, duly marked the boundaries thereof and placed of record the location notice. These locators leased the land to R. J. Armstrong Company, who in turn leased the land to plaintiffs. Plaintiffs entered and took possession of the land, for the purpose of drilling for oil in the latter part of Novem-

ber, 1919. No other party was then in possession. Plaintiffs, through a drilling contractor, erected a small building on the land and moved an oil drilling machine onto the premises and commenced, about that time, to drill for oil, pursuing the work diligently until December 13, 1919, when the well was "plugged" by some unknown party during the night time. The drilling contractor thereupon attempted to get the material from the well, succeeded in getting out at least most of it, and shortly thereafter, the exact date not appearing, plaintiffs commenced another well, diligently pursuing the work, till the commencement of this suit, on December 22, 1919, and, in fact, until the trial of this case on December 29, 1919. The drilling outfit was visible at all times to parties entering upon the land.

In the meantime, about December 15th, defendants, through one Briggs, entered the land, apparently in the day time, and on that and the succeeding day moved some material onto the land. On December 17th, 1919, they moved a drilling outfit onto the premises for the purpose of drilling for oil, locating the well a short distance from where plaintiffs were drilling. No one made any objections to such entry on December 15th, but on December 17th, the plaintiff Sparks, who in the meantime had temporarily been in Sheridan, and in response to a telegram that the land in question was being entered by other parties, followed, within about one hour and a half, the moving of the drilling outfit onto the land. Defendants had not then commenced drilling. What took place then will best be stated by setting out the testimony. Plaintiff Sparks testified:

"Q. And for what purpose did you go out there?

A. To see whether anybody had moved on and notify them to get off, if they had.

"Q. What did you find when you got out there?

A. We found they just pulled a rig in just ahead of us.

"Q. Do you know about how long ahead of you they had moved the rig in before you heard about it?

A.   As nearly as I could find out, from inquiry, not to exceed an hour and a half.

"Q.   Now, what did you do, Mr. Sparks, when you went on the ground and found a rig there?

A.   I talked with a man named Briggs, and asked him if he knew what ground he was on, and he said he did.   I asked him if he knew that we were drilling on it, and he said he didn't know whether we were or not, and I pointed to the rig right under the hill from him, and he said it didn't make any difference, he had a lease on it.   I notified him that we were working under a lease from the Armstrong Company, and told him if he didn't get off, we would begin proceedings, and he said that is just what he wanted done.

"Q.   Was Mr. Briggs apparently in charge there?

A.   Said he was.   He was running the outfit."

The witness Briggs testified on this matter as follows:

"Q.   You recall Mr. Wakeman and Mr. Sparks coming out to see you when you moved the rig in the first day?

A.   Yes, sir.

"Q.   And when you got the rig there they notified you they were in possession of that land?

A.   That is what they said.

"Q.   And that they didn't want you to come on there?

A.   That is what they said, something in regard to that."

The plaintiffs immediately placed the matter into the hands of their attorney, but owing to the difficulty of obtaining an injunction bond, this suit was not commenced till December 22, 1919.   The action was instituted for the purpose of restraining the defendants from trespassing on said land.   A temporary restraining order was issued.   The case was tried on December 29, 1919, upon issues joined, and judgment was entered herein, dismissing plaintiffs' petition and adjudging the right of possession to defendants.   From this judgment plaintiffs appeal under the so-called direct appeal statute.

No possession having been taken under the location of February 16, 1918, and no actual, real discovery having

been perfected thereunder, the land in question was open to entry under the mineral land laws of the United States on August 29th, 1919. Hence the plaintiffs, finding no one in occupancy, and having reasonable cause to believe that oil would be discovered, entered and took possession of the land lawfully, pursuant to the location made on the latter date, for the purpose of making a discovery of oil. These propositions are not seriously, if at all, questioned. The ground had been duly staked, the boundaries marked under the latter location, and the location notice had been duly recorded. Under these circumstances, these acts, as we said in Phillips v. Brill, 17 Wyo. 26, 36, 95 Pac. 856, indicated the extent of possession taken pursuant to such location. The rule appears to be reasonable, nor is any question raised thereon. It is supported by Cosmos Exploration Company v. Gray Eagle Oil Co., 112 Fed. 4, 15, and cases there cited. (See also Miller v. Chrisman, 140 Cal. 440, 73 Pac. 1083, 74 Pac. 444, 98 Am. St. Rep. 63.) As a practical matter in oil placer mining claims, discovery generally follows the posting of notices and other acts of location. If possession were confined to the ground actually occupied by the drilling outfit, then by reason of the interest, nay, excitement, often created by the findings of considerable traces of oil, scrimmages and contests as to who should first occupy the soil adjacent to the drilling ground would be apt to ensue, leading to breaches of peace. Hence the plaintiffs must be held to have been in actual occupancy of the whole of the land in question. They commenced to drill and work toward discovery of oil in the latter part of November, 1919, and continued such work diligently up to the time that the defendants attempted to enter. At that time, therefore, plaintiffs were lawfully in possession of the land, and the question is, whether, notwithstanding that fact, they were lawfully ousted therefrom.

The rule of law upon which counsel for defendants rely is stated aptly in the late case of Cole v. Ralph, 40 Sup. Ct. 321, as follows:

"In advance of discovery an explorer in actual occupancy and diligently searching for mineral is treated as a licensee or tenant at will, and no right can be initiated or acquired through a forcible, fraudulent or clandestine intrusion upon his possession. But if his occupancy be relaxed, or be merely incidental to something other than a diligent search for mineral, and another enters peaceably, and not fraudulently or clandestinely, and makes a mineral discovery and location, the location so made is valid and must be respected accordingly. Belk v. Meagher, 104 U. S. 279, 287, 26 L. Ed. 735; Union Oil Co. v. Smith, 249 U. S. 337, 346, 348, 39 Sup. Ct. 308, 63 L. Ed. 635, and cases cited."

Defendants claim that the acts of entry of Briggs for them can in no manner be characterized as *forcible, fraudulent,* or *clandestine;* that on the contrary it was peaceable; that, therefore, defendants having made a discovery first, the possession of the land was legally adjudicated to them. The cases do not throw a great deal of light on the question as to what is meant by the terms forcible, fraudulent and *clandestine* when used in connection with an entry, nor when such entry is effected in a forcible manner. In the case of Crossman v. Pendery, 8 Fed. 693, the adverse entry was effected by the consent of the first entryman. In the case of Ferris v. McNally, 45 Mont. 20, 121 Pac. 889, the first locator had neither actual possession, nor was he doing any work of discovery. In Cole v. Ralph, supra, no diligent search leading to discovery was being made when the second locator entered. Similar facts appear in other cases. Hence these cases throw no light on the case at bar. We may, however, glean some light from cases which treat the question here involved and state the rule of law applicable in a somewhat different manner. Thus, it was said in the case of Smith v. Oil Co., 166 Cal. 217, 135 Pac. 766:

"If a qualified person peaceably enters upon public lands of the United States for the purpose of discovering oil or other valuable mineral deposits therein, and such land is at the time unoccupied, and there is at the time no valid

mineral location or lawful entry thereon, under the land laws of the United States, such person has the right to continue in possession so long as he continues to occupy the same to the exclusion of others, and diligently and in good faith prosecutes thereon the work of endeavoring to discover such mineral therein.''

In three California cases language similar to that employed in Cole v. Ralph was used, but the courts elucidated the question somewhat more fully. These cases are Miller v. Chrisman, 140 Cal. 447, 73 Pac. 1083, 74 Pac. 444, 98 A. S. R. 63; McLemore v. Express Oil Co., 158 Cal. 562, 112 Pac. 59, 139 A. S. R. 147; Weed v. Snook, 144 Cal. 443, 77 Pac. 1023. In the first of these cases the court also said:

''It further appears that certain valuable rights become the property of such locators even before discovery. They have the right of possession against all intruders, (Garthe v. Hart, 73 Cal. 541, 15 Pac. 93) and they may defend this possession in the courts. (Richardson v. McNulty, 24 Cal. 339). They have then the right of possession and with it the right to protect their possession against all intrusions and to work the land for the valuable minerals it is thought to contain.''

In the second case the court says also:

''What the attempting locator has is the right to continue in possession, undisturbed by *any form of hostile or clandestine entry,* while he is diligently prosecuting his work to a discovery.'' (Italics are ours.)

In the third case the court also says:

''And we regard the law as settled that, while a locator, who has made his location, is engaged, in good faith, in prospecting it for minerals, and complies with the laws as to expenditures, and is in possession, the land is not open for location by others. In case of petroleum lands the discovery cannot, in most cases, be made except by considerable labor and expense in sinking wells. In making the location the locator necessarily takes into consideration surface indications, geological formations, proximity to known mines or wells producing oil. He must make his

location in good faith, and use proper diligence to make discovery of oil. If he does not do so, he will lose his rights, under his location, as to parties who may afterwards in good faith acquire rights. But where the locator is in possession under his location, and is actively at work through his lessees or otherwise, and expending money for the purpose of discovering oil, his ·rights cannot be forfeited to third parties who attempt to make locations under such circumstances. The law must.be given a liberal and equitable interpretation with a view of protecting prior rights acquired in good faith.''

The foregoing citations seem but to state the general rule, that where one party is lawfully in possession of a claim, no rights adverse to him can be initiated by a trespass. That rule has been announced by a number of courts, including this court, in the cases of Whiting v. Stroup, 17 Wyo. 1, 95 Pac. 849; and Phillips v. Brill, 17 Wyo. 26, 95 Pac. 856. It is supportd by 27 Cyc. 560; Cosmos Exploration Co. v. Gray Eagle Oil Co., 112 Fed. 4, 50 C. C. A. 79, 61 L. R. A. 230; Goodwin v. McCabe, 75 Cal. 584, 17 Pac. 705; Field v. Grey, 1 Ariz. 404, 25 Pac. 793; Lincoln-Lucky & Lee Min. Co. v. Hendry (N.M.) 50 Pac. 330; Cook v. Johnson, 3 Alaska 506, 542; Cowell v. Lammers, 21 Fed. 200, and other cases.

Since on December 15, 1919, the plaintiffs were in lawful possession of the land, attempting, by diligent prosecution of the work, to discover oil, the entrance on the land by the defendant Briggs, without the consent of plaintiff, constituted a trespass through which the defendants could not initiate any rights of possession against plaintiffs. In face of the protest made, we should·hardly characterize the entrance made as peaceable. It was certainly hostile. We further think it not entirely free from clandestineness. Briggs entered on the land during a short temporary absence of the plaintiff Sparks, who, apparently, was looking after the land for himself and his co-plaintiff. Defendants were not entitled to take advantage of such short temporary absence. (See Nevada Sierra Oil Co. v. Home Oil Co., 98

Fed. 673; Hansen v. Craig, 161 Fed. 861.) The work on the premises was done without interruption by agents of the plaintiffs. Because these agents were not instructed to look out for and promptly stop intrusion by strangers should not operate to the prejudice of plaintiffs. The latter were not compelled to anticipate trespass upon their lawful possession. If they were entitled to indulge in any presumptions, it was that men would respect lawful possession, rather than the opposite. The agents of plaintiffs apparently promptly notified Sparks by telegram of an intended intrusion, though not feeling called upon to stop it. Sparks promptly left Sheridan to meet the situation, and as soon as possible notified Briggs of his rights and that he would institute suit if necessary to protect them. This was before any drilling was done for the defendants. We do not think that it was necessary to keep on protesting prior to the commencement of the suit. Briggs apparently well understood the claims of the latter; his attitude was in defiance of those claims, and he welcomed a suit. To hold that plaintiff should have protested sooner, under the circumstances, would be equivalent to holding that the possession of a mining claim, held as in this case, cannot be legally maintained except by placing around the land a fence, with gates, or to have some one on the boundaries of the land continually on the watch against intruders. We do not think that the law should place that burden on a locator in good faith. In practice, the building of a fence would often be out of the question. To require a constant watch would frequently lead to attempts to evade him, and would simply encourage strife, breaches of the peace and violence. Nor do we think that there is shown herein a waiver of the rights of plaintiff by reason of the fact that the suit herein was not instituted till December 22, 1919, five days after Sparks protested to Briggs. Plaintiffs continued their work until the institution of the suit and even to the trial. The delay of bringing the action sooner was caused by circumstances beyond their control. We do not think that because of their inability, on account of the lack of financial re-

sources, instantly to furnish an injunction bond, we should visit punishment upon them. The learned trial court was no doubt misled herein by the somewhat ambiguous language used in Cole v. Ralph, supra, and other cases, and by the apparent equity existing in favor of defendants after they had gone to the expense and trouble of drilling and had actually made a discovery. But such apparent equity cannot outweigh the clear legal rights of plaintiffs, particularly when practically all the expense of defendants was incurred after definite warning of the claims of plaintiffs had been received.

The case is accordingly reversed and remanded to the district court of Weston County with directions to enter judgment for the plaintiffs as prayed.

*Reversed and Remanded.*

KIMBALL, J., concurs. POTTER, C. J., being ill, did not participate in the final decision.