GRANLICK ET AL. v. JOHNSTON ET AL.
(No. 1014; Decided March 13, 1923; 213 Pac. 98)

Mines and Mining—Oil Placer Locations—Possessory Mineral Rights—Discovery of Mineral—Adverse Mineral Claimant.

1. A discovery of oil on a placer claim confers an exclusive right to its possession and enjoyment as against a subsequent adverse locator, and it is not material that such discovery did not precede other acts of location required by law.
2. The performance of acts required by law for the location of an oil placer claim, except a discovery of oil thereon, confer no mineral rights as against an adverse claimant, unless followed by continuous possession and a diligent prosecution of work leading to a discovery of oil upon the claim.
3. Mineral claimants who, after performing the acts required by law for the location of an oil placer claim except a discovery of oil thereon, drilled a twenty-foot hole in a shale formation on the claim, into which they poured some water and from which they baled a small amount of "shale grease," or "oil colorings" and then discontinued possession and work leading to a discovery of oil on the

claim, acquired no rights, as against subsequent locators who drilled into an oil strata underlying said shale formation on the claim, which resulted in an actual discovery of oil.

ERROR to the District Court, Weston County; HON. E. C. RAYMOND, Judge.

Action by Fred D. Granlick and others against W. H. Johnston and others to recover possession of land claimed by plaintiff under an oil placer location. The material facts are stated in the opinion.

*Hagens & Murane* and *Greenwood & Dunbar,* for plaintiffs in error.

Mining laws, as enacted by Congress and supplemented by state legislation, are an outgrowth of the rules, customs and regulations observed and followed by miners, prior to such legislation, and the courts have considered such rules, customs and regulations in their interpretation of laws thus enacted; (Book v. Company, 58 Fed. 106, 120.) As applied to oil placer locations, geological conditions accompanied by a showing of oil upon the surface of water is held to constitute a discovery; (Nevada Company v. Home Oil Co., 98 Fed. 673; U. S. v. Ohio Oil Co., 240 Fed. 996.) The theory that oil must be found in commercial quantities is unsupported in reason and by very slight authority. What would be oil in commercial quantities is largely governed by transportation, market and other conditions that render the rule illogical and unsafe. The question of whether oil, in fact, has been found is a question of fact in each case, and that fact, being established, the claimant should not be left in uncertainty as to what his rights are. The contrary of this proposition is nothing more than an attempt by the Interior Department, to avoid the effect of the old rule in oil and gas claims, to the end that the public domain may be subject to Government royalties and control. The trial court apparently based its judgment upon a report made by the sheriff after the trial, in the absence of counsel, as to

the conditions of the well three weeks after both parties conceded conditions, testified to by the sheriff, existed. In this sort of a situation this court has repeatedly held that the judgment should be reversed (Martin v. Union Pac. R. R. Co., 1 Wyo. 143; Hilliard Flume Co. v. Woods, 1 Wyo. 400; Fein v. Tonn, 2 Wyo. 113; Fein v. Davis, 2 Wyo. 118; Garbanati v. Hinton, 2 Wyo. 271; Edwards v. O'Brien, 2 Wyo. 493; Ketchem v. Davis, 3 Wyo. 164; Rainsford v. Messengale, 5 Wyo. 1; Jackson v. Mull, 6 Wyo. 55; Adams v. Smith, 11 Wyo. 200; Columbia Mining Co. v. Duchess Mining Co., 13 Wyo. 244; Rock Springs National Bank v. Luman, 6 Wyo. 123.)   Plaintiff's claim was perfected in 1918, by a performance of the required acts of location and the performance of assessment work thereafter so that the land was not open to location by defendants in June 1919 and their entry was a mere trespass.   The placing of an old Crown drilling rig on the land by defendant in December 1919, conferred no rights, since this old machine was never used for any useful purposes.   It was an old machine, pulled around from one claim to another to keep other people from doing development work.   Merely working on a claim, unless such work has some necessary connection with ultimate development, does not constitute possession.   (Whiting v. Straup, (Wyo.) 95 Pac. 849.)   An attempted holding of a claim without discovery, by the pursuit of capital to prosecute work, and an idle cabin, lumber or unused derrick does not constitute possession.   (McLemore v. Co., 112 Pac. 59.)   The judgment should be reversed for the reason that there is a considerable amount of testimony, uncontradicted; that plaintiffs encountered commercial oil in their well on the 8th day of January at 11:30 P. M.; because a preponderance of the evidence, uncontradicted by any evidence except two witnesses for the defense, one of whom was uncertain as to dates, the other of whom clearly impeached himself and inadvertently corroborated the testimony of plaintiff's witnesses shows that defendants made no discovery until plaintiff's had brought a commercial well.

*R. E. McNally* and *Lonabaugh & Wenzell,* for defendants in error.

The evidence shows that plaintiffs drilled a twenty foot hole with a 2 inch auger on the land shortly after their location thereof, from which hole they bailed about a pint of oil; no possession was maintained by plaintiffs thereafter; this does not constitute a discovery; (Dean v. Oil Co., 21 Wyo. 125; Nevada v. Home Oil Co., 98 Fed. 673.) no other discovery had been made nor had possession been maintained by plaintiffs, prior to defendants' entry upon the land which was open and peaceable. The Crown drilling rig was placed on the land by defendants in good faith; it was out of repair; it had been broken by employees of another oil company; but the trial court found that defendants had acted in good faith in moving it upon the land; the case of Martin v. Union Pac. R. R. Co., 1 Wyo. 143 cited by plaintiffs is not in point. Defendants accept the rule announced in Rainsford v. Messengale, 5 Wyo. 1, that a finding upon conflicting evidence will not be disturbed; plaintiffs rely on the decision in the Ohio Oil Company case, to support their contention of discovery; the Circuit Court of Appeals in reviewing that case, it will be noted, based its decision solely on "diligent prosecution of work" and ignored the question of discovery. It is true that a location before discovery, if followed by diligent prosecution of work leading to a discovery, relates back to and validates the location notice, in the absence of intervening rights (Whiting v. Straup, 17 Wyo. 1), but there is no pretense of maintaining possession in the case at bar. It is similar to the case of Phillips v. Brill, 17 Wyo. 26. A report made by the sheriff who was appointed by the court to examine defendants' well at the conclusion of the hearing, is criticised; this is unimportant since plaintiffs' brief concedes that defendants had finished their well and had commercial oil therein on January 10. The trial court certified that the evidence of the sheriff was taken at the trial, and while this is disputed in plaintiffs' brief, their denial is not supported by affidavits; the sheriff was ap-

pointed by the court as a disinterested party to examine defendants' well, by reason of false testimony introduced by plaintiffs on that subject. A judgment will not be set aside because of conflicting evidence given upon an issue of fact. The judgment should be affirmed.

KIMBALL, Justice.

This case involves the right to possession of eighty acres of land valuable for oil.

The plaintiff's right is based upon a claimed location of a placer mining claim on the north half of the southeast quarter of section 7 and the north half of the southwest quarter of section 8; the defendants' upon a similar claimed location on the southwest quarter of section 8. The tract of which the right to possession is in dispute is the north half of the southwest quarter of section 8, each location including this tract as well as eighty additional acres not in dispute.

The judgment was for the defendants, and the plaintiffs have brought the case here by proceeding in error.

The parties on each side of the case are the eight original locators with whom are joined others claiming rights under contracts with them. As it will not be necessary to distinguish between the acts of the different plaintiffs on one side or of the different defendants on the other, a reference to plaintiffs may be taken to mean all or only some of them, and a reference to defendants may likewise be taken to mean all or only some of the defendants.

Before the month of February, 1918, the lands which the parties afterwards undertook to locate were unappropriated and open to location under the mineral land laws. In that month the plaintiffs, without having made any discovery of mineral, performed the other acts required by law for the location of their claim. They introduced evidence for the purpose of proving also that within the next few months, before any other rights intervened, they made a discovery of oil on the claim. We shall state so much of this evidence

as we deem necessary to an undertsanding of the point for our decision.

The geological structure of this country gave evidence that there was an anticline or enclosure which might contain oil, and exploration confirmed this by the discovery of oil bearing strata some 150 or 200 feet below the surface. Overlying this and extending from the surface to a considerable depth was a layer of shale from which, under favorable conditions, there was a slight seepage of oil. Into this shale formation one of the plaintiffs, using a two-inch auger, bored a hole to the depth of 20 feet and into the hole poured about a gallon of water. This water was left there for a day or two when it was baled out and oil found on top of it. It is clear that the lands were not sought for this shale nor for its oil content, but only for the oil expected to be discovered in the strata which lay below. The plaintiffs made no effort to reach the oil bearing strata on this claim until almost two years after their first acts of location. A witness for the plaintiff who observed these later drilling operations and the indications of oil in the shale as the drill passed through it, speaks of this seepage from the shale as "colors," "indications of oil," "colors of oil," and "shale grease," which he says did not signify that oil would be found below, but was only the usual condition to be expected in drilling in such a shale formation whether on or off an oil structure.

If the plaintiffs by the finding of the seeped oil in the auger hole made a discovery within the meaning of the mining laws, it is not material that discovery did not precede the other acts of location, and they would have had an exclusive right of possession and enjoyment of their claim which would have prevented any adverse location of the land. (Cole v. Ralph, 252 U. S. 286, 40 Sup. Ct. 321; 64 L. Ed. 567.) On the other hand, if they did not then make such a discovery, their attempted location at that time was invalid and of itself conferred no right to exclude others from the land.

The question of discovery is one of fact. (Columbia Mining Co. v. Duchess Mining Co., 13 Wyo. 244, 79 Pac. 385; Garibaldi v. Grillo, 17 Calif. App. 540, 120 Pac. 425.) In disposing of cases where the claim of discovery has been based upon seepage from the surface formations, the courts have been inclined to construe the evidence as showing a discovery of indications of oil rather than an actual discovery of the oil itself. In Whiting v. Straup, 17 Wyo. 1, 20, 95 Pac. 849, 129 Am. St. Rep. 1093, this court quoted with approval from Nevada-Sierra Oil Co. v. Home Oil Co., 98 Fed. 673, that:

"To constitute a prior discovery which will support a location on public ground as an oil placer claim under the mining laws, the locator must have actually discovered oil within the limits of his claim. Mere surface indications of the existence of oil therein, however strong, are not sufficient, nor is the existence of oil on adjoining lands."

While it would seem that this was said with reference to surface indications on adjoining lands, there are many other cases where such indications on the claimed lands have been held not to be a discovery. In Dean v. Oil Company, 21 Wyo. 133, 128 Pac. 881, 129 Pac. 1023, the facts were not unlike those in the case at bar, and it was there held that the trial court was justified in finding that there had been no discovery. The case of Miller v. Chrisman, 140 Calif. 440, 73 Pac. 1083, 74 Pac. 444; 98 Am. St. Rep. 63; 25 Sup. Ct. 468; 49 L. Ed. 770, affirmed 197 U. S. 313, is of the utmost importance for the reason that its decision in the Supreme Court of the United States called forth what seems to be the only expression by that court of its opinion with reference to the sufficiency of a discovery of oil to support a placer mining location. The Supreme Court of California, conceding that the evidence in this case showed a seepage of oil on the surface of the lands in question (which were the same lands involved in the case of Nevada-Sierra Oil Co. v. Home Oil Co., supra), held that there was no sufficient evidence of a discovery, saying:

"To constitute a discovery, the law requires something more than conjecture, hope, or even indications. The geological formation of the country may be such as scientific research and practical experience have shown to be likely to yield oil in paying quantities. Taken with this there may be other surface indications, such as seepage of oil. All these things combined may be sufficient to justify the expectation and hope that, upon driving a well to sufficient depth, oil may be discovered; but one and all they do not, in and of themselves, amount to a discovery."

And the Supreme Court of the United States (197 U. S. 320) 25 Sup. Ct. 468; 9 L. Ed. 770, in the same case, referring to the evidence of the seepage of oil on the lands, says that it did not establish a discovery but only suggested a possibility of mineral. The court quotes with approval Lindley on Mines, Sec. 336, in part as follows:

"The facts which are within the observation of the discoverer, and which induce him to locate, should be such as would *justify* a man of ordinary prudence, not necessarily a skilled miner, in the expenditure of his time and money in the development of the property."

And, continuing, the court says:

"It is true that when the controversy is between two mineral claimants the rule respecting the sufficiency of a discovery of mineral is more liberal than when it is between a mineral claimant and one seeking to make an agricultural entry, for the reason that where land is sought to be taken out of the category of agricultural lands the evidence of its mineral character should be reasonably clear, while in respect to mineral lands, in a controversy between claimants, the question is simply which is entitled to priority. That, it is true, is the case before us. But even in such a case, as shown by the authorities we have cited, there must be such a discovery of mineral as gives reasonable evidence of the fact either that there is a vein or lode carrying the precious mineral, or if it be claimed as placer ground that it is valuable for such mining."

And again referring to the testimony of the witness who laimed to have seen the seepage of oil on the lands, the court says:

"There was not enough in what he claims to have seen to have justified a prudent person in the expenditure of money and labor in exploitation for petroleum."

Other cases where a finding of oil or gas, or indications thereof, in the surface formations has been held insufficient to establish a discovery are Weed v. Snook, 144 Calif. 439, 77 Pac. 1023; New England etc. Oil Co. v. Congdon, 152 Calif. 211, 92 Pac. 180; United States v. McCutchen, 238 Fed. 575; Olive Land Co. v. Olmstead, 103 Fed. 568.

The plaintiffs rely upon the decision of the United States District Court in the case of United States v. Ohio Oil Co., 240 Fed. 996, where evidence of the finding of oil in shallow wells was held to show a discovery. On appeal to the Circuit Court of Appeals (United States v. Grass Creek Oil & Gas Co., 236 Fed. 481) 149 C. C. A. 533, the decree of the District Court was affirmed without passing upon the sufficiency of the evidence to prove a discovery, but upon the ground that the evidence justified a finding that defendants were in possession of the claims diligently prosecuting work leading to a discovery. From the statement of the facts in this case we would not say that we think the District Judge was not right in holding that the discovery was such as justified a prudent person in expending his time and money in the development of the property. Giving to that decision the careful consideration due to the opinions of the eminent Judge who made it, we may safely say that the sum of all the authorities is that a discovery of slight seepage of oil from surface formations, as in this case, does not necessarily establish a discovery within the meaning of the mining laws. In the case at bar we think the evidence justified the inference that the disclosures made by plaintiffs' experiments with the auger had no influence on their other acts, either to induce them to locate, or to justify them in expending their time and money in the development of the claim, and the

finding of the trial court that there was no discovery at that time should not be disturbed. (United States v. McCutchen, supra.)

No other material act was done by any of the parties until the summer of 1919 when the defendants performed the several acts necessary to a location of their claim, except that they, like the plaintiffs, made no discovery of oil. Neither plaintiffs nor defendants made any attempt to take or keep possession of the ground, or to discover oil, until December, 1919. At that time neither party having a valid discovery, but both having done the other things essential to a valid location, it will be granted that the eighty acres in controversy would rightly come into the possession of the parties who first entered upon their claim and proceeded diligently and persistently to prosecute work looking to the discovery of oil. (Whiting v. Straup, supra; Union Oil Co. v. Smith, 249 U. S. 337, 39 Sup. Ct. 308, 63 L. Ed. 635.) And thereafter, so long as they continued actually to occupy their claim and in good faith to prosecute such work, they would be protected against trespassers as to their whole claim as marked on the ground and described in the location notice. (Phillips v. Brill, 17 Wyo. 26, 95 Pac. 856; Sparks v. Mount (Wyo.) 207 Pac. 1099.)

It appears that the drilling operations in this field were carried on by means of small portable drilling rigs. The largest of these, referred to as the "Crown" rig, owned by defendants, had been located in the field for some time, but no actual drilling had ever been done with it in that locality. About December 20, this rig was moved by defendants to their claim, and they discovered then, if they did not know it before, that it was in need of repairs before it could be used for drilling purposes. The repairs were ordered, but were not received until some time later, and no drilling with the Crown rig was ever done on this land, and there is no evidence of any acts of possession or occupancy of the lands by defendants, except this placing of the Crown rig thereon, until January 4, following. About noon of that

day the defendants moved to their claim another drilling machine, and there is substantial evidence to prove that they commenced actual drilling during the afternoon of that day, and continued until a discovery of oil was made on January 7.

In the meantime, on December 27, the plaintiffs moved to their claim a building referred to as a "cook house," which they testified was for the purpose of preparing for drilling operations they were about to commence. Some witnesses testified to their conclusion that from that date the plaintiffs were in possession of the claim diligently working for a discovery. The testimony as to the facts showing such possession and work from December 27 to January 5 was neither definite nor satisfactory. One witness said "they were getting lined up;" another that they were "making arrangements to get our tanks there and lumber to build two more houses with; getting our supplies, etc." There was evidence that they had nothing on the ground until after January 4, except the cook house which was not occupied until the evening of that day. One witness made the general statement that men went to the claim for the purpose of working there every day between December 27 and January 5, but there was no further evidence as to how long they were there or the nature and extent of their work. The plaintiffs made no effort to show more definitely the nature of their possession on January 4, when defendants moved their drilling machine to their claim and commenced drilling. It appears clearly that the defendants' entry at that time was without any opposition or objection, and there was evidence from which it may reasonably have been inferred that plaintiffs' claim was then deserted. The plaintiffs' drilling rig was moved to their claim January 5, when drilling was commenced and continued until oil was discovered on January 8. All of this work by plaintiffs was done on the north half of the southeast quarter of section 7, the part of their claim which was not in dispute.

Defendants assert that they had a right to possession of their claim before discovery, by reason of the placing of the Crown drilling rig on the land and endeavoring with diligence to obtain repairs for it. The plaintiffs assert a similar right to possession of their claim by reason of the placing of the cook house on the land and the doing of the other acts indefinitely described by the testimony to which we have just referred.

We deem it unnecessary to decide whether or not the defendants acquired such a right. The court was justified in deciding that they made the first discovery which perfected their placer location and gave them the clear right to possession of their whole claim, unless the trial court should have held that the plaintiffs were entitled to exclude defendants from the disputed tract by reason of some right acquired by plaintiffs by their occupancy of and work upon their claim from December 27 to January 4.

A concise statement of the controlling rule is found in the following language from Union Oil Co. v. Smith, supra, p. 348, 39 Sup. Ct. 311; 63 L. Ed. 635:

"Whatever the nature and extent of a possessory right before discovery, all authorities agree that such possession may be maintained only by continued actual occupancy by a qualified locator or his representatives engaged in persistent and diligent prosecution of work looking to the discovery of mineral."

The importance of this "continued actual occupancy" of the claim is clear when it is borne in mind that the persons protected by the rule are those who have no rights as locators, but whose locations, lacking discovery, are invalid; that the rule itself is a development of the principle that the right to locate a mining claim cannot be based on a trespass (Whiting v. Straup, supra, p. 23), 95 Pac. 849; 129 Am. St. Rep. 1093, and an extension of the right of a *bona fide* prospector to be protected in his *pedis possessio* (Lindley on Mines, Sec. 218.) The necessity for such an occupancy is but stated in another way when it is said that the object of

the rule is to protect an explorer against a forcible, fraudulent or clandestine entry, for, obviously, if he do not maintain a continued actual occupancy, the land may be taken by some one acquiring a right by an entry which is neither forcible, fraudulent nor clandestine, but so long as he maintains a continued actual occupancy, it is difficult to see how any hostile entry could be made that would not be either forcible, fraudulent or clandestine. (Sparks v. Mount, supra, quoting Cole v. Ralph, supra.)

The sufficiency of plaintiffs' occupancy of their claim to entitle them to the protection of this rule was debatable under the evidence. It seems to us that the trial court was justified in believing that the evidence failed to show any continued actual occupancy, except what might be presumed from the ownership and location of an uninhabited cook house which in the circumstances probably had a pronounced bearing only on the question of actual possession of the ground on which it stood, and that ground, as already stated, was not claimed by defendants. (Cole v. Ralph, supra.) And if we confine our attetnion to January 4, the time when defendants entered and commenced drilling on their claim, there seems to be no substantial evidence that plaintiffs or their representatives were anywhere in that locality. If the trial court believed that plaintiffs ever entered into actual occupancy of their claim, he was justified in finding from the evidence that their occupancy was thereafter so far relaxed that it afforded them no protection on January 4, against the defendants' entry which in the circumstances was peaceable and neither fraudulent nor clandestine. (Cole v. Ralph, supra.) With this point thus disposed of there is no doubt that thereafter to the time of trial the defendants were entitled to possession of their whole claim, and the judgment in their favor was correct.

The record shows that the trial commenced January 31, 1920, and that judgment was rendered February 2, following. It also shows that on the last mentioned date a witness, Charles A. Howell, testified that at the direction of the

court he had measured the defendants' well which he found to be 150 feet in depth containing 44 feet of oil. It is claimed that after the trial the court directed this witness to measure defendants' well, and later, in the absence of counsel for defendants, heard his testimony. We think there is nothing in the record from which we can presume that such irregular proceedings were taken. This testimony, like the other testimony in the bill of exceptions, is certified to have been taken at the trial, and in the absence of a showing to the contrary, we cannot presume that this is not the fact. We might add that plaintiffs admit the discovery of commercial oil by defendants as early as January 10, and under the view we take of the case we do not see how this evidence as to the condition of the well on February 2 could have been prejudicial.

We find no error in the record and the judgment of the District Court is affirmed.

*Affirmed.*

POTTER, Ch. J., and BLUME, J., concur.